HARRIS, by guardian *ad litem*, Appellant, vs. CAMERON, Respondent.

*January 15 — February 2, 1892.*

*Negligence: Purchase of air-gun by father for son: Court and jury.*

1. The purchase by a father for his son, eleven years old, of a toy air-gun, was not an act of culpable negligence, nor could he reasonably have anticipated the improper and dangerous use of it by a boy to whom his son lent it, resulting in an injury to another boy.
2. The question of negligence on the part of the father in making such purchase, the facts being undisputed, was one of law for the court.

APPEAL from the Circuit Court for *Winnebago* County.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The facts are stated in the opinion. The plaintiff appeals from a judgment of nonsuit.

*F. W. Houghton,* attorney, and *Geo. G. Greene,* of counsel, for the appellant, to the point that the question of defendant's negligence was for the jury, cited *Spensley v. Lancashire Ins. Co.* 54 Wis. 438; *Atkinson v. Goodrich Transp. Co.* 60 id. 141; *Milw. & St. P. R. Co. v. Kellogg,* 94 U. S. 469; *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223; 16 Am. & Eng. Ency. of Law, 436, and cases cited in note 3; Id. 444; *Shumaker v. St. P. & D. R. Co.* 46 Minn. 39; *Gibbons v. Wis. Val. R. Co.* 58 Wis. 335, 342; *Sioux City & P. R. Co. v. Stout,* 17 Wall. 745; *Kaples v. Orth,* 61 Wis. 533; *Jucker v. C. & N. W. R. Co.* 52 id. 152; *Carter v. Towne,* 98 Mass. 567; *Birge v. Gardiner,* 19 Conn. 507; *Lowery v. Manhattan R. Co.* 99 N. Y. 158; *Lane v. Atlantic Works,* 111 Mass. 136; *Binford v. Johnston,* 82 Ind. 426; *Kerr v. Forgue,* 54 Ill. 482; *Powers v. Harlow,* 53 Mich. 507; *Nagel v. Mo. Pac. R. Co.* 75 Mo. 653; *Keffe v. M. & St. P. R. Co.* 21 Minn. 207; *Gulf, C. & S. F. R. Co. v. Styron,* 66 Tex. 421; *Powell v. Deveney,* 3 Cush. 300; *Dixon v. Bell,* 5

Maule & S. 198; *Robinson v. Cone*, 22 Vt. 214; *Insurance Co. v. Tweed*, 7 Wall. 44; *Bridger v. A. & S. R. Co.* 25 S. C. 24; *Ferguson v. C. & R. R. Co.* 75 Ga. 637; 77 id. 102; *Kansas Cent. R. Co. v. Fitzsimmons*, 22 Kan. 686; *Daley v. N. & W. R. Co.* 26 Conn. 591; *Koons v. St. L. & I. M. R. Co.* 65 Mo. 592; *Lynch v. Nurdin*, 1 Q. B. 29; *Whirley v. Whiteman*, 1 Head, 610; *Hill v. P. & R. R. Co.* 55 Me. 438; *Bailey v. N. H. & N. Co.* 107 Mass. 496; *Bryant v. C. V. R. Co.* 56 Vt. 710; *Hibler v. McCartney*, 31 Ala. 501; *Grand Trunk R. Co. v. Richardson*, 91 U. S. 454; Wharton, Neg. secs. 85, 853, 92; *Green Ridge R. Co. v. Brinkman*, 23 Am. & Eng. R. Cas. 342; Shearm. & Redf. Neg. secs. 686, 688, 739; *Miller v. Pendleton*, 8 Gray, 547; *Conklin v. Thompson*, 29 Barb. 218; *Hill v. Charlotte*, 72 N. C. 55; *Mullins v. Blaise*, 37 La. Ann. 92; *Moebus v. Becker*, 46 N. J. Law, 41; *Ireland v. O., H. & S. P. R. Co.* 13 N. Y. 526; *Townley v. C., M. & St. P. R. Co.* 53 Wis. 632; *Hill v. Fond du Lac*, 56 id. 246; *Nelson v. C., M. & St. P. R. Co.* 60 id. 324; *Dodge v. Bank of Ky.* 2 A. K. Marsh. 616; *Baltimore C. P. R. Co. v. Kemp*, 61 Md. 74; *Terre Haute & I. R. Co. v. Buck*, 96 Ind. 346; *Salmon v. D., L. & W. R. Co.* 38 N. J. Law, 5; *Ala. G. S. R. Co. v. Chapman*, 80 Ala. 615; *Ehrgott v. Mayor*, 96 N. Y. 264, 280; *Harriman v. Railway Co.* 45 Ohio St. 11; *Bransom's Adm'r v. Labrot*, 81 Ky. 638; *Kolsti v. M. & St. L. R. Co.* 32 Minn. 133; *Atchison & N. R. Co. v. Bailey*, 11 Neb. 332.

For the respondent there were briefs by *Phillips & Kleist*, attorneys, and *Gabe Bouck*, of counsel, and oral argument by *M. C. Phillips* and *Mr. Bouck*. To the point that where the facts are undisputed and there is no reasonable chance for drawing different conclusions from them, the question of negligence becomes one of law for the court, they cited *Elmore v. Hill*, 51 Wis. 365; *Delaney v. M. & St. P. R. Co.* 33 id. 67; *Gagg v. Vetter*, 41 Ind. 228; *Greenleaf v. Ill. Cent. R. Co.* 29 Iowa, 14; *Abbett v. C., M.*

& St. P. R. Co. 30 Minn. 482; Donaldson v. M. & St. P. R. Co. 21 id. 293; Fletcher v. A. & P. R. Co. 64 Mo. 484; Callahan v. Warne, 40 id. 131; Central R. Co. v. Moore, 24 N. J. Law, 824; Gonzales v. N. Y. & H. R. Co. 38 N. Y. 440; Filer v. N. Y. C. R. Co. 49 id. 47; Ranch v. Lloyd, 31 Pa. St. 358; Westchester & P. R. Co. v. McElwee, 67 id. 311; Pittsburgh, Ft. W. & C. R. Co. v. Evans, 53 id. 250; Banlec v. N. Y. & H. R. Co. 59 N. Y. 356; Shearm. & Redf. Neg. sec. 11.

ORTON, J. The facts of this case, so far as necessary to make the decision intelligible, are substantially as follows: Some time prior to the 5th day of October, 1889, the defendant, a resident of the city of Oshkosh, and the father of the boy Robbie Cameron, of the age of about eleven years, bought at the hardware store of Webb & Rundles in said city, for his son Robbie, a metallic air-gun, called the "Daisy Air-Gun," to replace a wooden air-gun that Robbie had formerly had and used; and Robbie had played with and used this air-gun to shoot at a mark, and perhaps small birds, about his home and in the neighborhood, for some time. On the date aforesaid, two neighboring boys, Bud Thompson, about the age of nine years, and Byron Harris, the plaintiff, of about the age of fourteen years, who, with Robbie, had been in the habit of visiting and playing with each other, came to play with Robbie at his home,— Byron on stilts, and Bud on a safety bicycle. Robbie was playing with his air-gun, and Bud let Robbie use his "safety," in exchange for the gun. Bud fired it several times, and finally aimed it at Byron, who said, "Stop; don't!" Bud then rested the gun on a board, a part of a grape trellis, and aimed it again at Byron, who tried to move out of the way a little on his stilts, and Bud fired, and shot Byron in the left eye, by which it was destroyed. This kind of air-gun was usually loaded with BB

shot, and. the defendant bought his son Robbie a quantity of such shot, to be used with the gun. Robbie had played with other boys in the neighborhood with his gun, and other boys had used it. This kind of gun would shoot strong enough, near by, to kill or wound a small bird, or dent a board, and, as we know, destroy an eye.

This court can take judicial knowledge of the nature and uses of this *air-gun*, as it can of "*beer*" (*Briffitt v. State*, 58 Wis. 39), or of "*gas*" (*Shepard v. Milwaukee G. L. Co.* 6 Wis. 539), or of an express or freight "*car*" (*Nicholls v. State*, 68 Wis. 416). It may be properly said, both from the evidence and common knowledge, that this kind of air-gun was often kept for sale by toy and hardware merchants; and, if not generally, was much, used by boys about the ages of these three boys, in the villages and cities of this state. And it may also be said that this kind of gun was manufactured as a toy; sold, bought, and generally used as a toy, and harmlessly. It is so generally known that a particular description of it is not necessary. The power is. air pressure, which is forced into a small space in the small barrel by a plunger; and by a movement of the trigger the compressed air escapes outwardly, and forces out the shot with considerable force.

It should be said that the boy Bud Thompson did not intend to shoot *Byron* in the eye or face. Discharged against the clothing, it would have been harmless, and so he probably intended. Whatever may be said of the continuity of dependent causes which connect the defendant with this act of the boy Bud Thompson, it was an act of carelessness on the part of this boy who did the shooting. He aimed at *Byron*, and intended to shoot him in some place, and it is questionable whether he is not primarily and independently liable to the plaintiff for the injury. But this action is brought against *George H. Cameron*, the father of the boy Robbie, who loaned the gun to Bud

Thompson; and he is sought to be held liable for the injury, on the ground of his negligence in buying the gun for Robbie, his son. After a fair and full trial of the case, the court, on motion of the defendant, granted a nonsuit, and from this judgment this appeal is taken.

This case presents very important and unusual questions of law in connection with the facts, and they have been presented to this court and discussed by eminent counsel on both sides with great learning and ability. The two main questions are: *First.* Was the defendant guilty of an act of culpable negligence, *per se*, in buying this air-gun for his boy? *Second.* If so, could he have reasonably anticipated or expected such a dangerous and improper use of it by the boy Bud Thompson? If it is held that the defendant was not guilty of an act of negligence, *per se*, in so buying the gun, then it becomes necessary to decide the second question.

We are clearly satisfied that it was not an act of culpable negligence on the part of the defendant. The act or fact must be such that the negligence can be directly and logically inferred from it. *Wood v. C., M. & St. P. R. Co.* 51 Wis. 196. The defendant's negligence must be proved, and cannot be presumed. *Chamberlain v. Mil. & Miss. R. Co.* 7 Wis. 425; *Steffen v. C. & N. W. R. Co.* 46 Wis. 259; *Denby v. Willer,* 59 Wis. 240. The defendant's negligence in buying this article for his son and giving it to him to use, must mainly depend upon the nature and uses of the thing itself. What is it? It is called an " air-gun." A gun, in the usual sense, is a " weapon which throws a projectile or missile to a distance; — a fire-arm, for throwing a projectile with gunpowder." A *weapon* is " an instrument of offensive or defensive combat; something to fight with." Webst. Dict. A fire-arm is a " weapon which acts by the force of gunpowder." Id. Our statute (sec. 1, ch. 116, Laws of 1882, and sec. 2, ch. 329, Laws of 1883)

Harris vs. Cameron.

provides: " It shall be unlawful for any person to sell or use, or have in his possession for the purpose of exposing for sale or use, any toy pistol, toy revolver, or *other fire-arm.*" " It shall be unlawful for any dealer in pistols or revolvers, or any other person, to sell; loan, or give any pistol or revolver to any minor in this state." These prohibited pistols or revolvers must be fire-arms,— that is, " weapons which act by the force of gunpowder." The *air*-gun or pistol is not prohibited. This air-gun is not a *gun* or a weapon in the above signification of the words; but called a " gun," imitative only of a real gun, to give it dignity to a boy, or to play soldier with. The bow and arrow, when put in the form of a cross-bow, is called a " cross-gun," — a plaything for boys. One of these will put out an eye, if so aimed; and so, too, as to many toys and playthings, perfectly harmless and inoffensive in themselves, but whose common use can be perverted into a dangerous use by design. There are very few of the most harmless toys which cannot be used to the injury of another. A pocket-knife, that a boy must have to whittle and make things with, may become, in the hand of a bad boy, a most dangerous instrument of wrong and injury. Every boy over the age of six years or less must have a " ball-club; " and a boy of ten or more can with it knock out an eye, or the teeth, or crush in the skull, of another boy; and a hard " regulation ball " may put out an eye. Many of the toys for a baby may be used for injury.

In all of these cases the thing in itself, and when used in the manner and for the purposes for which it was made, and when put to its ordinary or common use, is harmless, and yet may be used exceptionally for personal injury. It is easy to convert almost any good thing into an evil by improper use. What shall we say, then, of this toy gun? It is not dangerous in itself, and was not intended to be dangerous or to do mischief. It was designed for a mere

toy or plaything for boys. It is commonly used as a toy and plaything by boys. The defendant bought it as a plaything for his boy. It is presumed that he bought it to be used in the natural and common way. He had no reason to expect that it would ever be used to shoot a boy's eye out. He is only responsible for the consequences which naturally, commonly, and reasonably follow its proper and natural use. He had no reason to expect that any boy would ever aim it at the face of another boy. To hold the defendant negligent in buying this toy gun, and that from the character of the thing itself, and from his having reasonably expected therefrom that this mischief would occur, would open an almost limitless field of liability in respect to all toys and playthings for boys, purchased with the same harmless intention. This toy gun was made for such boys, and is commonly used by them by common consent. Is it a sufficient *test* of its dangerous character that it has once been used in this improper way, when in all the other numberless instances of its use it has been used only for innocent amusement, as it was intended to be?

In any view that can be taken of this device as a toy or plaything, but which can possibly be put to a dangerous use, it would be illogical and unreasonable to hold that the defendant was guilty of culpable negligence in buying it for his boy, and ought to have reasonably expected that such an unusual and extraordinary consequence would follow it. He is only chargeable with *ordinary* care, such as fathers generally would exercise under like circumstances. *Parish v. Eden*, 62 Wis. 272. It was held in *Hagerty v. Powers*, 66 Cal. 368, that the father was not liable for giving his eleven-year-old boy a loaded pistol to play with, and an accident happened by the boy's careless use of it. The court said in that case that "we have been cited to no case controlled by the principles of the common law that holds that the action, under such circumstances, can be

maintained." In that case it was a loaded pistol; in this, a toy gun. In that case the defendant's son did the mis-chief; in this the defendant's boy did no harm with it. In *Chaddock v. Plummer*, 50 N. W. Rep. (Mich.), 135, the defendant bought a similar air-gun, with similar shot, for his nine-year-old boy, and another boy found it in a storm-door, and the defendant's wife gave the boy some shot, and in firing it at a board on a frequented street the shot glanced and put out the plaintiff's eye. The court held " that it was not negligence *per se* for the defendant to buy this toy gun and place it in the hands of his boy, nine years of age." In *Poland v. Earhart*, 70 Iowa, 285, a store keeper sold a revolver to a minor, fifteen years of age, who accidentally fired it and injured himself. The father of the boy sued the store-keeper; and it was held that he could not recover, as the accident could not have been reasonably anticipated.

It is sufficient for this case that it would not have been negligence if the defendant's own son had committed the act, because he could not have reasonably anticipated or expected such a result. We will not, therefore, consider whether there was not the intervention of a new and independent cause for the injury in another boy committing the act. If he could have reasonably expected such a result, it must have been from the nature and character of this toy gun alone, for there was nothing else proved on which to predicate such an expectation. The question is whether the defendant was guilty of negligence in so buying the gun for his boy, not having any reasonable expectation of any such result. We have shown that the negligence of the defendant could not be inferred — *first*, from the nature of the air-gun itself; and, *second*, from the fact that he ought to have reasonably expected such a result. His negligence cannot be inferred from what he did, or from any of the reasonably expected consequences of it.

The learned counsel of the appellant have not been able to find any case that bears any close analogy to this, where negligence of the defendant could be imputed under such circumstances. They, however, urge most vigorously, and cite many authorities to the point, that defendant's negligence in such cases is a question for the jury and not for the court. That would be so where the question depended upon many facts and circumstances from which different persons might reasonably draw different inferences or conclusions. But where the evidence, as in this case, is plain and positive, and admits of no doubt or controversy, the question of negligence is for the court as a question of law. *Jalie v. Cardinal*, 35 Wis. 118. The facts in the case are not controverted. The whole case depends upon questions of law alone. There is nothing for the jury to find but legal conclusions and the amount of damages. Where, as here, the facts are undisputed, and there is no reasonable chance for drawing different conclusions from them, the question of negligence becomes one of law for the court. *Elmore v. Hill*, 51 Wis. 365. See other authorities cited in respondent's brief. We are most clearly satisfied that it was the duty of the court to order a nonsuit in this case.

*By the Court.*— The judgment of the circuit court is affirmed.