CLAYBROOKS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 27.  Argued January 8, 1971.—Decided February 2, 1971.
(Also reported in 183 N. W. 2d 143.)

* See ante, p. 79, involving same defendant convicted of another offense of armed robbery.

For the plaintiff in error there was a brief and oral argument by *Nathaniel D. Rothstein* of Milwaukee.

For the defendant in error the cause was argued by *Lee Edward Wells*, assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren*, attorney general, and *E. Michael McCann*, district attorney.

BEILFUSS, J.  The defendant's assignment of error is that the trial court failed to give adequate instructions as to all the necessary elements of armed robbery. If the defendant's position is correct and the inadequacy was prejudicial, the defendant's remedy is a new trial.

Both parties recognize that an erroneous jury instruction is a trial court error and that it is not reviewable as a matter of right in this court on appeal unless a motion for a new trial based upon such error was made in the trial court.[1] While this rule is not to be taken lightly for the reasons set forth in the cases cited in the footnote, it is discretionary, and in the sound exercise of our discretion we will hear appeals of this nature in proper cases.

In this case counsel representing Claybrooks on this writ of error, Mr. Rothstein, was not the trial counsel. He was appointed by this court to represent Claybrooks upon his request for appointment of counsel to represent him as an indigent. Mr. Rothstein's appointment was not made until a day or two before the expiration of the period in which the defendant could appear or obtain a writ of error, or file a motion for a new trial. Under these circumstances it would have been almost impossible for counsel to interview Claybrooks and review the record in order to make any meaningful motion for a new trial before the expiration of the period in which the motion could have been made. Under these circumstances, in the exercise of our discretion, we will review the alleged error.[2]

Three verdicts were submitted to the jury—armed robbery, robbery, and not guilty. The jury returned the verdict of armed robbery.

It is the claim of the defendant that instructions given to the jury were inadequate in that they did not adequately describe or define "armed with a dangerous weapon" as required by statute.

A resumé of the important facts as they appear from the record are as follows:

---

[1] *State v. Rodell* (1962), 17 Wis. 2d 451, 117 N. W. 2d 278; *State v. Ruud* (1969), 41 Wis. 2d 720, 165 N. W. 2d 153; *Schwamb v. State* (1970), 46 Wis. 2d 1, 173 N. W. 2d 666.

[2] *Hundhauser v. State* (1969), 44 Wis. 2d 447, 171 N. W. 2d 397.

At the trial the defendant, Claybrooks, was positively identified as one of four robbers by Rolland George Seibel, a customer of the union hall, and Helen Hensler, office manager of the union hall. Both testified that they observed and identified the defendant as he entered the hall before he was able to cover his face with a scarf. They also testified that he had a gun in his hand at all times during the robbery, and Seibel testified that defendant poked the gun in the back of his head and threatened to "blow your head off" as he forced him to lie on the floor with several other customers.

Catherine Spein testified that she was employed at a clinic across the street from the union hall on the day of the robbery, and that when she looked out the window she noticed four men acting strangely. She stated that they entered the union building around 4 p. m., the time of the robbery, and came out about five minutes later. As they left the building they ran past the clinic, jumped over a fence, and entered a waiting automobile. After defendant had been taken into custody she identified him as one of the four men she had observed.

Audrey Gross was in the area of the union building at the time of the robbery and observed three men jump over a fence and run past her to a waiting car. She stated that one of them dropped a "bunch of money" as he passed her and stopped to pick it up. When they reached the car she observed a fourth man who apparently had passed on the other side of her. She was unable to identify any of the men she had seen.

Louis Kazinski testified that he was a customer in the union hall at the time of the robbery and that he observed that the robbers carried guns but he was unable to identify any of the men.

The defendant testified that he did not commit the offense and interposed an alibi defense claiming that he was at home in bed on the day of the robbery. This was

corroborated by the testimony of his wife, Lutrell Claybrooks. However, no issue has been raised on this writ of error concerning that defense. In any event, our review of the record convinces us that the evidence of identification and participation is positive and unquestionably sufficient.

The defendant contends the instructions given to the jury as to armed robbery were inadequate and therefore erroneous. The state argues (1) that defendant's failure to raise a timely objection when the instructions were given, and his failure to request any additional instructions, constitutes a waiver and precludes him from raising the question on a writ of error, and (2) any error in the instructions was at worst harmless error and does not necessitate a new trial, since the evidence clearly establishes that the defendant should have been found guilty. The defendant urges the court had the duty sua sponte to give the necessary instructions and therefore there is no waiver.

Among the various instructions which the trial court gave in charging the jury was the following instruction:

"The information in this case charges that Eddie Claybrooks is guilty of the charge of robbery armed. All of the elements which will be described to you in the court's instructions must be proved by the burden of proof required. If, however, you are not satisfied that Mr. Claybrooks was guilty of the charge of robbery armed but merely that of robbery as defined by the court, then you should consider whether he is guilty of this offense in the second form of the verdict which reads, 'We, the jury, find the defendant, Eddie Claybrooks, guilty of the charge of robbery in violation of Section 943.32 (1) (b) of the Criminal Code of Wisconsin,' which is a lesser included offense under the charge of the information.

"It is necessary, in other words, for you to find all of the elements in 943.32, robbery, plus the additional element of being armed by the proof required before you can respond to the first form of the verdict.

"The second form of the verdict if you are satisfied from the evidence that Eddie Claybrooks was guilty of the charge of robbery, but are not satisfied that it was an armed robbery."

The court then instructed as to the elements of the crime of robbery as defined in sec. 943.32, Stats., and fully and adequately explained each of the elements necessary to constitute the offense. It followed this by saying:

"There is the fourth element in the event of armed robbery, namely, that a weapon was used. You must be satisfied beyond a reasonable doubt that such weapon was used for that purpose."

Later, the court instructed:

"Concerning the charge, that portion of the offense of armed robbery, you are advised that one who is in the company of others in the commission of a crime is a party to the crime and is as responsible for the acts of those others who accompany him as he himself would be were he directly the person responsible for the particular act. If you are satisfied from the evidence in the case that others who participated in the crime were, in fact, armed, as indicated by some of the evidence in the case, then you are, on the basis of that evidence and that evidence alone, able to bring in a verdict of armed robbery, providing, of course, that you have found, first of all, that Mr. Claybrooks participated in the robbery as such."

And finally the court stated to the jury:

"It is for you to determine which one of the forms of verdict submitted you will bring in as your verdict. The court has already indicated the distinction between the first and the second forms. It is solely that of whether or not you, the jury, find that accompanying the robbery there was the element of the parties being armed or not. The burden of proof is upon the State to establish this by that degree of proof previously described."

A review of these pertinent portions, plus the entire instructing of the jury, leads to the conclusion that the

only possible basis for defendant's argument that the court failed to properly instruct the jury on the elements of armed robbery is the fact that the court did not specifically instruct the jury on the definition of a "dangerous weapon" as set forth in sec. 939.22 (10), Stats.:

" 'Dangerous weapon' means any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm."

No request was made by defendant's counsel that this definition be read to the jury, and no objection was made when the court omitted it. When the court finished instructing the jury, the following took place:

"*The Court*: Before swearing in the officer I will ask if there was any inadvertent mistake in reading the instructions, either in the language used or omissions?
"*Mrs. Neff* [Defendant's trial counsel] : No."

It is true that a jury may not be left to speculate what constitutes a particular offense, but must be instructed on each essential element of the offense charged against the defendant. *State v. Johnson* (1936), 221 Wis. 444, 267 N. W. 14. In the instant case each of the elements of armed robbery was included in the instructions, and the objection is that one of them was not adequately defined or explained since the court did not, sua sponte, read the statutory definition of a "dangerous weapon."

While the instruction as to armed robbery would have been in better form had the statutory definition of a dangerous weapon been given, failure to so instruct sua sponte is not prejudicial error unless it is shown that the omission affected a substantial right of the defendant.

Sec. 274.37, Stats., provides :-

"No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on

the ground of misdirection of the jury, . . . unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

In *State v. Kuick* (1948), 252 Wis. 595, 599, 560, 32 N. W. 2d 344, the statute is described as follows:

"This section [274.37] applies to civil and criminal cases alike by its terms. This section has been in force since 1909 and has been considered by the court many times. The section was enacted to enable the court to avoid reversals on account of errors which did not substantially affect the rights of the defendant. . . .
". . . Bare technical error will not justify the disturbance of a verdict even in a conviction of a homicide. *Manna v. State* (1923), 179 Wis. 384, 192 N. W. 160."

Considerable testimony was presented at trial that the defendant was armed with a gun. Rolland George Seibel, who testified that he is quite familiar with guns, identified it as a "Bunt Line Special," and stated that defendant pointed the gun at him and later poked it in the back of his head, threatening to "blow your head off." Helen Hensler and defense witness Louis Kazinski also described the gun brandished by the defendant during the robbery.

Any error in failing to include the statutory definition of "dangerous weapon" was harmless. The trial court clearly instructed the jury that the element of being armed with a weapon was essential to a finding of guilty on the charge of armed robbery. All of the testimony relating to a weapon described it as being a gun. If the weapon had been some object other than a gun a factual question as to whether it was a dangerous weapon may have been presented, and in that instance the statutory definition of a dangerous weapon could have been of critical importance. The same would be true if the state were required to establish that the gun was loaded, or that it

in fact was a lethal gun. However, no such showing is incumbent upon the state.[3]

It is apparent that all of the witnesses were convinced that the object they observed the defendant brandishing was a gun. Defendant pointed the object at them and issued threats commensurate with the fact that it was a real gun and he would use it to kill them if necessary. The description of the weapon, together with the overt acts surrounding its use, was sufficient to prove beyond a reasonable doubt that the weapon used was a gun, and therefore a dangerous weapon within the statutory definition. *Boyles v. State, supra.*

The only factual question presented the jury in deciding between a finding of guilty of unarmed robbery or guilty of armed robbery was whether the defendant did in fact use a gun. For the court to instruct the jury that a gun is a dangerous weapon would simply be to advise it of a fact readily apparent to the jury. There was no question as to the nature of the weapon, it was a gun and therefore a dangerous weapon. The only question was whether or not the defendant had the weapon and used it in the robbery. Clearly he did. In view of this the failure to instruct on the statutory definition of a dangerous weapon was harmless error beyond any doubt.

We are of the opinion that the inadequacy of instructions was waived by the defendant and his trial counsel but because we have concluded the error was harmless we do not discuss the waiver issue.

*By the Court.*—Judgment affirmed.

---

[3] *Boyles v. State* (1970), 46 Wis. 2d 473, 477, 175 N. W. 2d 277.