**STATE of Maine**

v.

**Maurice P. CHILDS.**

Supreme Judicial Court of Maine.

June 23, 1978.

Thomas E. Delahanty, II (orally), Dist. Atty., Auburn, for plaintiff.

Sachs & Grasso by Michael J. Levey (orally), Alan L. Sachs, James V. Grasso, Jr., Winthrop, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Active Retired Justice.[1]

Maurice Childs, the defendant, was indicted for assault and battery of a high and aggravated nature upon the person of one Jean Gilbert allegedly committed on October 31, 1974 in the Town of Sabattus, Maine. Tried before an Androscoggin County jury, Childs was convicted of the offense charged. He appeals from the

---

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

judgment of conviction and ensuing sentence. We deny the appeal.

Two claims of error have been briefed and presented to us for our consideration, (1) whether the Justice below committed reversible error in his instructions to the jury in the use of certain examples to clarify the distinction between an assault and battery of the misdemeanor type and one of a high and aggravated nature, and (2) whether in the course of such instructions he misquoted the evidence, in each instance, it is claimed, inferentially expressing ·an opinion to the jury upon the facts of the case contrary to 14 M.R.S.A., § 1105.[2]

■ Since no objections were raised to the charge at the trial level as provided by Rule 30(b), M.R.Crim.P.,[3] our review thereof in relation to the points raised for the first time on appeal is limited to the determination, whether as a whole it contained obvious error which affected the appellant's substantial rights. *State v. Gagne*, Me., 362 A.2d 166 (1976); *State v. Deveau*, Me., 354 A.2d 389 (1976); *State v. Westphal*, Me., 349 A.2d 168 (1975); *State v. Armstrong*, Me., 344 A.2d 42 (1975). Rule 52, M.R. Crim.P.[4] But, to reach the obvious error or manifest injustice stage, there must be an initial determination that there was error. *State v. Deveau*, supra, at 390.

### Facts

On the evening of October 31, 1974 a pick-up truck owned by Jean Gilbert was seen veering off Route 126 in the Town of Sabattus down an embankment toward the river. The local police were notified and responded. Another truck driver who happened along, however, was the first person to reach the mired truck resting on the edge of the river bank, Mr. Gilbert had his little daughter, Kathy, three years of age, in his arms, when Mr. Cyr, the truck driver, offered assistance in removing them from the truck. Gilbert was very reluctant to release his daughter and did so only after Mr. Cyr assured him that Kathy would be well taken care of. Mr. Cyr and Officer Laplante of the Sabattus Police Department then helped Gilbert up the embankment toward the road. Gilbert was unsteady on his feet. In the early part of the evening he had taken, so he testified, three shots of gin, some aspirin and other non-prescription medicine, as he was nursing a head cold. Worrying about the whereabouts of his daughter, Gilbert would release himself from the hold of Officer Laplante and Mr. Cyr, turn around and shout at the top of his lungs, where's Kathy? As the three of them neared the crest of the hill, the defendant, Maurice Childs, a full-time police officer for the Town of Sabattus, arrived. He was on duty and in uniform. Seeing Gilbert pull away from Officer Laplante and Mr. Cyr, which Gilbert had done several times previously as he was being helped up the embankment, Officer Childs, as some of the witnesses testified, struck Gilbert over the head with a large metal flashlight and put the handcuffs on him, ordering Officer Laplante to take him to the county jail. Gilbert was bleeding profusely, so the officer transported him to St. Mary's General Hospital in Lewiston for treatment of his injuries. A stitch or more was required to repair the cut on his head which Gilbert had sustained above the hairline by reason of Childs' blow with the flashlight.

---

**2.** 14 M.R.S.A., § 1105 provides as follows:

"During a jury trial the presiding justice shall rule and charge the jury, orally or in writing, upon all matters of law arising in the case but shall not, during the trial, *including the charge*, express an opinion upon issues of fact arising in the case, and such an expression of opinion is sufficient cause for a new trial if either party aggrieved thereby and interested desires it, and *the same shall* be ordered accordingly by the law court on appeal in a civil or criminal case." (Emphasis additional)

**3.** Rule 30(b), M.R.Crim.P.

"*Instructions.* * * * No party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. . ."

**4.** Rule 52, M.R.Crim.P.

"(b) *Obvious Error.* Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Officer Childs' account of the affair is much different from that given by the other witnesses. He testified that it was Gilbert who punched him in the mouth when the defendant inquired of Officer Laplante whether Gilbert was under arrest. Childs claims that he was trying to parry the blow when he threw the flashlight at Gilbert, but did not intend to hit him on the head with it. We need not concern ourselves with the facts as they presented a jury question which was decided unfavorably to the defendant.

### Instructions respecting aggravation

The defendant claims that the Justice below expressed an opinion on facts contrary to the provisions of 14 M.R.S.A. § 1105, when in his instructions to the jury he first explained to them that the distinctive feature between a simple assault and battery and one of an aggravated nature lay in the seriousness of the assault and battery, and then followed that broad instructional concept with supportive specific examples such as these:

"If I slap you across the face, Mr. Hart [jury foreman], and perhaps make a red mark on your face with my hand, then I would think there would be no question about the fact, and again all of the other elements being present, I had committed an assault and battery on you. It would be classified as a misdemeanor, simple assault and battery; the circumstances under which this occurred would not under our present standards be considered to be a serious or aggravated type of assault.

"On the other hand, if I stabbed you with a knife or, if I hit you over the head with an axe, or a bar, or a piece of wood or shot you with a gun,

\*     \*     \*     \*     \*     \*

I think the difference between what is an aggravated assault and what is a simple assault is something that your common sense and intelligence would recognize without a great deal of difficulty. Look at the totality of the circumstances. You look at, who are the people involved in this. The nature and extent of the injury may be a factor of determining whether or not it is a simple assault or an aggravated assault.

\*     \*     \*     \*     \*     \*

"And so, you consider the totality of the people, the circumstances, the nature of the injury, the type of weapon that was used, the consequences that could flow from the use of that particular device in order to inflict that particular injury. Maybe the defendant who was wielding this particular piece of equipment didn't intend to do much harm. Because of the very nature of what it was he was using, and the manner in which he was using it, he should have known that it was capable of inflicting a serious injury, even a mortal injury upon the person, and, therefore, his conduct, act, and results of his conduct and act became more serious and therefore are aggravated.

"So you will have to examine the circumstances in this case and determine first: Was there an assault and battery committed here in accordance with the guidelines I have given to you. If you find there is no assault and battery on the basis of principles I have told you of, then of course you stop right there, you don't have to go any farther. Your verdict is then not guilty. *If you find there was an assault and battery committed by this defendant upon Mr. Gilbert, and you have no reasonable doubt, you then have to determine whether or not you find the assault was of a high and aggravated nature, or whether or not it was a simple assault and your verdict, as you will return it, Mr. Hart, will reflect the jury's finding in that particular area.*" (Emphasis ours)

█ It is axiomatic in a criminal case that, by his plea of not guilty, an accused puts in issue each essential element of the crime charged against him, and the State must prove beyond a reasonable doubt each necessary ingredient of the criminal accusation. *State v. Davis*, Me., 384 A.2d 45 (1978); *State v. Liberty*, Me., 280 A.2d 805,

807 (1971); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

■ True, the crime of assault and battery is a unitary offense, whether simple or aggravated, and the factual circumstances which establish the degree of criminal culpability and determine the severity of the sentence are not elements of the crime itself. *State v. Pinnette*, Me., 340 A.2d 17, 25 (1975); *State v. Davenport*, Me., 326 A.2d 1, 9 (1974); *State v. Ferris*, Me., 249 A.2d 523, 527 (1969). Nevertheless, the burden is upon the State to prove beyond a reasonable doubt that the offense of assault and battery is of a high and aggravated nature. *State v. Ferris*, supra, at 528. See *Mullaney v. Wilbur*, 421 U.S. 684, 699, 95 S.Ct. 1881, 1890, 44 L.Ed.2d 508, at note 24 (1975).

■ Our system of criminal justice, to attain just and efficient results, cannot allow juries to speculate as to what conduct the law proscribes by a specific criminal statute. Thus, it is mandatory on the part of the trial judge to instruct the jury as to the fundamental principles of law which control the case. *State v. Butler*, 27 N.J. 560, 143 A.2d 530, 550 (1958). See also *Claybrooks v. State*, 50 Wis.2d 87, 183 N.W.2d 143 (1971); *People v. Pepper*, 389 Mich. 317, 206 N.W.2d 439 (1973); *State v. McHenry*, 13 Wash.App. 421, 535 P.2d 843 (1975).

We said in *State v. Devoe*, Me., 301 A.2d 541 (1973):

"What constitutes 'aggravation' is neither self-explanatory nor capable of accurate definition in the abstract. The concept assumes substance and meaning to a jury only when related to facts and events. This and other courts have, of necessity, recognized certain sets of circumstances whereby what otherwise would be a simple assault is elevated to a higher grade, namely, aggravated assault, depending upon the proof."

The defendant contends that the use of the specific examples of hitting the victim over the head with an axe, or a bar, or a piece of wood by the defendant as being conduct and an act more serious and there-fore aggravated was tantamount to an expression of opinion on the facts contrary to 14 M.R.S.A., § 1105. We disagree.

■ The correctness of the court's instructions to the jury is to be determined from the entirety of the charge and not from isolated extracts therefrom. *State v. Devoe*, supra, at 546; *State v. Gagne*, Me., 349 A.2d 193, 197 (1975).

■ It is only when the trial justice, in his allusion to the facts of the case, gives an authoritative or binding directive to the jury as to what their findings should be respecting a factual question that there would be a transgression of the statutory proscription against the expression of an opinion upon issues of fact on the part of a presiding justice.

"It is the authoritative expression of an opinion as to an issue of fact arising in the case which the statute prohibits, and not the suggestion of an obvious inference from admitted facts and circumstances made to assist the jury in coming to a clear understanding of the law and the evidence." *State v. Mathews*, 115 Me. 84, 97 A. 824 (1916).

See also *Benner v. Benner*, 120 Me. 468, 115 A. 202 (1921).

■ In the instant case, it is clear to us that the charge as a whole did not violate the mandate of 14 M.R.S.A., § 1105; it did not usurp the jury function. It is obvious from the entirety of the charge the presiding Justice believed that, if the injury sustained by the victim at the hands of the defendant were proved beyond a reasonable doubt to have been inflicted through the use of any of the weapons alluded to in the examples submitted to the jury, the assault and battery, provided the jury did conclude there was an assault and battery under the legal principles he had explained to them, would be of a high and aggravated nature. This instruction was circumscribed by the Justice's clear admonition at the beginning of the charge that they, the jury, are the sole judges of the facts and by his concluding statement which expressly left to the jury to determine, if they did find there

was an assault and battery committed by this defendant upon Mr. Gilbert beyond a reasonable doubt, whether or not the assault and battery was of a high and aggravated nature.

The defendant's complaint in this regard is not well taken. See *State v. Devoe*, supra; *State v. Ryder*, Me., 348 A.2d 1 (1975).

*Instruction—Misquotation of the Evidence*

■ The defendant secondly complains that the presiding Justice in his instructions to the jury misquoted the evidence. That part of the charge under attack reads as follows:

"You are the sole judges of the facts. We have you here for that purpose. *And we expect you to use* your intelligence, your wisdom, and your experience in interpreting what these people say, and in determining whether or not the principles that are required have been proven in accordance with the law, *not your sympathies, not because you are sorry for Mr. Gilbert because 'he had his head split open' and blood streaming down in his face and clothes, not because you are angry perhaps with Mr. Childs because he struck Mr. Gilbert with a flashlight.* Our verdicts we hope, and certainly the law does not expect or want, or recognize a verdict brought about by anger or sympathy or any other emotional fact. There are certain basic factual matters that have to be proven; we expect the Jury will determine whether these factual matters have been proven on the basis of reason and logic, intelligence and wisdom, and not because you are a very sympathetic person, not because you are an angry person, not because you are a law and order person, or not because you are, and if you will excuse the expression, a bleeding heart. None of these factors have any right in the determination of the issues in this or any other case." (Emphasis added)

It is in the above context that the alleged misstatement of the evidence took place. We note initially that the presiding Justice does not purport to quote the evidence. His allusion to the facts of the case in this instance does not rise to a misquotation of evidence. Even though no witness testified in the very terms used by the trial Justice, nevertheless, the undisputed evidence was to the effect that Mr. Gilbert had sustained on his head a cut which required one or more stitches to close, from which he bled profusely. It is clear to us that the jury could not have given the reference remark any meaning different from what Mr. Gilbert had testified to in regard to his injury.

We hold that in the use of this highly picturesque language the presiding Justice did not misquote the evidence, nor did he mislead the jury in respect to any issue in the case. If the Justice's descriptive verbiage was considered by the defendant's counsel too pungent for accuracy, it was his duty to call it to the attention of the Court for ready correction prior to jury deliberations.

It is not good legal policy, nor is it justice to the parties litigant, whether the State or the defendant, to permit one to sit by and hazard the chance of a verdict, all the time reserving an easily correctible possible error to be the basis of a later appeal in case of an untoward result with the jury.

The defendant's claim that the Justice's reference to Mr. Gilbert's head being split open was tantamount to expressing an opinion to the jury contrary to the statutory prohibition of 14 M.R.S.A., § 1105 is not well taken.

■ Even if the defendant's attack on the Justice's charge had disclosed error on either or both points of appeal, our review of the instructions in their entirety under the "manifest error-serious injustice" standard would not warrant a reversal of the defendant's conviction, since such error would not have been of "such compelling magnitude as to warrant the conclusion that defendant's trial was fundamentally unfair." *State v. Barker*, Me., 387 A.2d 14 (1978).

Furthermore, the prosecutor's case would not have been significantly less persuasive

to the mind of the average juror, had the instructions been given to the satisfaction of the defendant's counsel, and we see no reasonable possibility that the court's instructions, even if couched in unquestionable terms, would have resulted in a different verdict. See *State v. Deveau*, Me., 354 A.2d 389, 392 (1976); *State v. McDonough*, Me., 350 A.2d 556, 564 (1976); *State v. McKeough*, Me., 300 A.2d 755, 761 (1973).

As we said in *State v. Ryder*, supra, at page 6:

> "As we read the charge in its entirety, we are impressed with the clarity of its language and the effort of the presiding Justice to posit the issues squarely before the jury in a fashion both fundamentally fair and neutral. We are confident that the jurors, as reasonable persons specially selected for jury service in this case [here, the jury had experience for serving in prior cases], were well aware of their unique and exclusive function in weighing the evidence produced before them and in determining from the evidence, the guilt or innocence of the accused. We find that the jury, so constituted, could not properly infer from the instructions, any such expression of opinion in violation of 14 M.R.S.A., § 1105, as asserted by the defendant."

The entry will be

Appeal denied.

Judgment affirmed.

WEATHERBEE, J., sat at oral argument and participated in conference, but died prior to the preparation of the opinion.

DELAHANTY, J., did not sit.