STATE of Wisconsin, Plaintiff-Respondent,

v.

Sean T. POWELL, Defendant-Appellant.†

Court of Appeals

*No. 2011AP630–CR. Submitted on briefs December 6, 2011.
—Decided February 22, 2012.*

2012 WI App 33

(Also reported in 812 N.W.2d 520.)

† Petition for Review filed 4/16/12.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard L. Kaiser* of Law Offices of *Richard L. Kaiser* of South Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Maura FJ Whelan*, assistant attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. KESSLER, J.   Sean T. Powell appeals from a judgment convicting him of carrying a concealed and dangerous weapon in violation of WIS. STAT. §§ 941.23 and 939.51(3)(a) (2009–10),[1] and felony bail jumping, based on the concealed weapon offense, contrary to WIS. STAT. §§ 946.49(1)(b) and 939.50(3)(h). Powell argues that the trial court erred when it denied his motion for a directed verdict at the close of the State's case during his jury trial because the State did not provide evidence that the firearm seized operated by the force of gunpowder. Therefore, Powell argues, the State did not provide evidence that the firearm seized was a dangerous weapon as defined by § 941.23. We disagree and affirm.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

## BACKGROUND

¶ 2.   According to the criminal complaint, on June 19, 2009, Powell was charged with one count of misdemeanor carrying a concealed and dangerous weapon and one count of felony bail jumping. The complaint alleged that on June 17, 2009, Officer Joseph Spingola observed a damaged Dodge Ram pull into a parking lot near 5566 North 60th Street, Milwaukee, where Spingola was conducting a business check. The complaint further alleged that Spingola made contact with the passenger in the vehicle, later identified as Powell, and noticed Powell remove a small, black object from his left pant pocket. He then noticed Powell place the object between his seat and the center console. Spingola recovered the object, which turned out to be a small framed, loaded .38 caliber semi-automatic handgun. Powell was subsequently arrested. At the time of his arrest, Powell was on bond in Milwaukee County Circuit Court Case No. 2008CF1621, charging a felony offense of manufacturing or delivering cocaine. A condition of Powell's bond required that he not commit any new offenses.[2]

¶ 3.   Powell was tried by a jury in a two-day trial. In the opening instructions, the trial court defined the terms "dangerous weapon" and "firearm" for the jury, stating: "Dangerous weapon means any firearm, whether loaded or unloaded. A firearm is a weapon that acts by force of gun powder."

¶ 4.   Three witnesses testified at trial:   Spingola; his partner, Officer Kyle Mrozinski; and the State's crime lab witness, Jason Reifschneider. Both of the officers testified as to the events leading to Powell's

---

[2] The parties stipulated that Powell knew the terms of his bond required that he not commit a new crime.

arrest. Spingola testified that while he, Mrozinski, and another officer were on foot patrol, he noticed a Dodge Ram, lacking a front license plate and with a severely cracked front windshield, pull into a nearby parking lot. He also noticed that the operator of the vehicle had to manipulate a screwdriver to turn the engine off—something Spingola testified was commonly indicative of a stolen vehicle. Spingola further testified that as he and his partners got closer to the vehicle, the driver started the vehicle and started to reverse; however, Spingola ordered the driver to turn the vehicle off. Spingola stated that as the driver was parking the vehicle upon his order, he heard Powell say "go, go, go, go, go."

¶ 5.   Spingola stated that he approached the passenger side of the vehicle and asked Powell for identification. At that point, Spingola stated, Powell reached into his left pocket and "remove[d] a small black object from his waist[band] . . . and he pulled it down on the side of his passenger seat, in between the center console of the vehicle on the side of the seat." Suspecting that Powell had removed a weapon from his pocket, Spingola testified that he asked Powell to step out of the car. Powell did not do so easily, as he attempted to hold onto the bottom of his seat while Spingola attempted to remove him from the vehicle. Powell was finally removed from the vehicle, at which point Spingola stated that he moved the passenger seat forward and noticed a small, fully-loaded, black semi-automatic handgun on the side of the passenger's seat. Spingola specifically identified the gun as an "F.E.G. 380 . . . a .38 caliber." Both the gun and a picture of the gun were shown to the jury and entered into evidence.

¶ 6.   Mrozinski corroborated Spingola's testimony pertaining to the recovery of the concealed weapon and stated that the weapon recovered was a "380 black

semi-automatic pistol." Mrozinski referred to the concealed weapon interchangeably as a "gun" and a "firearm." Reifschneider also referred to the weapon interchangeably as a "gun" and a "firearm."

¶ 7. At the close of the State's case, Powell, through counsel, moved the trial court for a directed verdict, arguing that the State failed to meet its burden in proving the concealed weapon charge. Specifically, Powell argued that the State failed to prove that the firearm recovered was a "dangerous weapon," as defined by Wis. Stat. § 941.23, because there was no testimony indicating that the firearm acted "by force of gunpowder." The trial court denied the motion, stating that the testimony of the officers and the display of the gun itself, made it "clear that this is, in fact, a firearm as defined by the statute." Powell was found guilty on both charges. This appeal follows.

## DISCUSSION

### I. Standard of Review.

¶ 8. Powell contends that the State failed to provide evidence sufficient to prove an essential element of the offense, namely, that the weapon seized constituted a dangerous weapon. In reviewing whether the evidence was sufficient to support a conviction, an appellate court must determine whether, after viewing the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. LaCount*, 2008 WI 59, ¶ 25, 310 Wis. 2d 85, 750 N.W.2d 780 (citation and quotation marks omitted).

## II. The State was not required to prove that the firearm acted by force of gunpowder.

■

¶ 9.   Powell argues that for the firearm to constitute a "dangerous weapon" under WIS. STAT. § 941.23(2), the firearm must act by force of gunpowder. Powell relies on WIS JI—CRIMINAL 910, an instruction given to the jury, which defines "dangerous weapon" as "any firearm, whether loaded or unloaded. A firearm is a weapon that acts by force of gunpowder." Because there was no testimony at trial pertaining to whether the firearm operated by force of gunpowder, Powell argues, the State did not meet its burden in proving that Powell concealed a dangerous weapon. Powell is mistaken.

¶ 10.   WISCONSIN STAT. § 941.23(2) provides that any person, other than those excepted by statute, who carries a concealed and dangerous weapon is guilty of a Class A misdemeanor. *Id.* "Dangerous weapon" is defined by WIS. STAT. § 939.22(10), in relevant part, as "any firearm, whether loaded or unloaded." *Id.* Neither statute defines "firearm" further.[3]

¶ 11.   The State points out that the definition of firearm provided in WIS JI—CRIMINAL 910 dates back to 1892 when our supreme court decided *Harris v. Cameron*, 81 Wis. 239, 51 N.W. 437 (1892). *Harris* was a civil negligence case in which the defendant bought a metallic "Daisy Air-Gun" for his son. *Id.* at 241. The defendant's son loaned the gun to another child, who

---

[3] We note, however, that with regard to the safe transportation and use of weapons by police officers, WIS. STAT. § 167.31(1)(c) defines "firearm" as "a weapon that acts by force of gunpowder." *Id.* However, the State was not required to prove that the firearm acted by force of gunpowder under WIS. STAT. § 946.49(1)(b).

shot the plaintiff in the eye. *Id.* The air gun was loaded with "BB shot." *Id.* at 241–42. In concluding that the defendant was not negligent in purchasing the air gun for his son, the court took judicial notice of the nature and uses of the air gun and articulated the "force of gunpowder" definition of "firearm" in order to note the difference between a child's air gun, and an actual, conventional, firearm. *See id.* at 242–44. This definition is helpful in cases akin to *Harris* to distinguish between actual firearms and toy guns. It is also helpful in distinguishing between firearms and weapons that *do not* act by force of gunpowder, but are still dangerous weapons. *See Rafferty v. State*, 29 Wis. 2d 470, 475–77, 138 N.W.2d 741 (1966) (In determining whether a pellet gun was a dangerous weapon in an armed robbery case, our supreme court stated that the pellet gun was not a firearm because it did not act by force of gunpowder, but was nevertheless a dangerous weapon that could produce great bodily harm.).

¶ 12.   The *Harris* court did not the address the question of whether the State must provide evidence of a firearm operating by force of gunpowder in criminal proceedings. Since *Harris*, however, case law has recognized handguns and pistols as "firearms" without requiring the State to provide evidence that the weapons operate by force of gunpowder. In *Claybrooks v. State*, 50 Wis. 2d 87, 183 N.W.2d 143 (1971), our supreme court addressed the question of whether the trial court's failure to give a jury instruction defining "dangerous weapon" in an armed robbery case warranted a new trial for the defendant. *Id.* at 88–89. The missing definition was the language provided by Wis. Stat. § 939.22(10) (1971–72). *See Claybrooks*, 50 Wis. 2d at 93. The court held that the missing instruction was harmless because considerable testimony was taken at

trial stating that the defendant had a gun. *Id.* at 94. The court went on to say that "all of the witnesses were convinced that the object they observed the defendant brandishing was a gun .... The description of the weapon, together with the overt acts surrounding its use, was sufficient to prove beyond a reasonable doubt that the weapon used was a gun, and therefore a dangerous weapon within the statutory definition." *Id.* at 95.

¶ 13.   Similarly, in *State v. Rardon*, 185 Wis. 2d 701, 518 N.W.2d 330 (Ct. App. 1994), we interpreted WIS. STAT. § 941.29 (1993–94), the felon in possession of a firearm statute. *See Rardon*, 185 Wis. 2d at 702–03. We concluded that a disassembled firearm constitutes a firearm that operates by force of gunpowder. *Id.* at 706–07. We noted that the State presented testimony that the disassembled firearm could be operational if assembled, but we did not note whether the State presented evidence about whether the firearm acted by force of gunpowder. *See id.* at 704. Rather, in referencing an unrelated statute defining "firearm" as a " 'weapon that acts by force of gunpowder,' " we held that there was "no question that the [.25 caliber] Raven [semi-automatic] pistol is a weapon that, if operational, 'acts by force of gunpowder.' " *Id.* at 705 (citation omitted).

¶ 14.   Essentially, both the supreme court and this court took judicial notice of the fact that it is common knowledge that the guns at issue operated as dangerous weapons because they used gunpowder to fire projectiles.[4] We conclude, therefore, that neither the statutes

---

[4] *See Perkins v. State*, 61 Wis. 2d 341, 346, 212 N.W.2d 141 (1973) ("[A] court can take judicial notice of many facts that are matters of indisputable common knowledge.").

nor case law required the jury in this case to separately determine whether the .38 caliber semi-automatic pistol Powell attempted to conceal operated by "force of gunpowder." Rather, the jury was required to decide whether the pistol was a "firearm" for the purposes of determining whether it was a dangerous weapon. Spingola testified in detail as to the circumstances leading to his discovery of the weapon. Spingola and Mrozinski both identified the gun as a *loaded* .38 caliber semi-automatic pistol. Mrozinski and Reifschneider both interchangeably referred to the weapon as a "firearm" and a "gun." Further, in weighing the evidence, the jury was permitted to take into account matters of common knowledge, observations and experience in the affairs of life. *See* Wis JI—Criminal 195; *see also State v. Alexander*, 214 Wis. 2d 628, 648, 571 N.W.2d 662 (1997) ("A strength of our jury system is that 'jurors . . . bring their experiences, philosophies, and common sense to bear in their deliberations.' ") (citation omitted). Common knowledge suggests that at this point in time, one would have to be devoid of any media source not to understand that firearms fire bullets as a result of ignited gunpowder. The operation of firearms is constantly depicted in movies, television, video games and books. Testimony explaining the obvious, that the pistol operated by force of gunpowder, was not necessary to prove that it was a dangerous weapon.

## CONCLUSION

¶ 15.  Viewing the evidence presented in the light most favorable to the State, we conclude that credible evidence was presented for the jury to determine that the .38 semi-automatic handgun concealed by Powell was a dangerous weapon as defined by Wis. Stat. § 941.23(2) and that the State was not required to

present evidence that the firearm operated by force of gunpowder. We affirm the trial court.

*By the Court.*—Judgment affirmed.