COURT OF APPEALS
DECISION
DATED AND FILED

July 26, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1731-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF836

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ARSHPREET SINGH,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS and STEPHANIE ROTHSTEIN, Judges. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Arshpreet Singh appeals from a judgment and an order denying his postconviction motion.[1]  Singh contends that his trial attorney was ineffective in multiple ways, and that he is entitled to a new trial in the interest of justice.  As discussed below, we reject Singh's arguments and affirm.

## BACKGROUND

¶2     On December 4, 2017, fifty-nine-year-old M.G., who is blind in one eye, was forced into a stranger's car and sexually assaulted.  Shortly thereafter, M.G. underwent a sexual assault examination.  Singh's DNA was found on M.G., and he was charged with second-degree sexual assault, false imprisonment, and kidnapping.

¶3     The case proceeded to a jury trial.  Relevant to this appeal, the following evidence was presented.  M.G. testified that on December 4, 2017, she went shopping at Value Village in Milwaukee.  As she was waiting for a bus near 27th Street and National Avenue, a white car drove past her and asked her if she needed a ride.  M.G. said "no," and started walking back towards the store.  M.G. testified that she was nervous because it was dark outside and the white car had driven around the area a few times.  M.G. went into a donut store for food, and when she came back outside, the man in the white car forced her into the car.

¶4     The man drove M.G. to the Mitchell Park Domes, which was nearby.  There, he pulled down her pants and put his penis inside her vagina and anus.  M.G. said that she tried to fight him off of her, but he was younger, bigger, and

---

[1]  The Honorable Mark A. Sanders presided over the jury trial.  The Honorable Stephanie Rothstein issued the order denying the postconviction motion.  We refer to Judge Sanders as the trial court and Judge Rothstein as the postconviction court.

stronger. The man used a condom, but the condom broke and his semen spilled all over her. The man then took her phone and other belongings and threw them out the door and told her to get out.

¶5 After the assault, M.G. called 911. M.G. stated that she was crying and screaming for help. M.G. saw a security guard and told him what happened. After the police arrived, M.G. went to the hospital and underwent a sexual assault examination.

¶6 M.G. testified that the assailant had a diamond earring, a tattoo on the left side of his neck, was "kind of slim," had a complexion that was similar to hers, was "all shaved off," and was wearing grey sweatpants and a grey shirt with a zipper. On cross-examination, she clarified that she meant the assailant's hair was recently "shaved off," or in other words, "very, very short," and he did not have any facial hair. M.G. admitted that she had some cocaine and beer the day of the assault, but that this did not cause her to misinterpret what had happened. She stated that the assailant did not offer or give her any money.

¶7 A video recording was played of the Mitchell Park Domes parking lot. The video shows a white car driving towards the area of the Domes where M.G. said that she was assaulted. Later, the white car is seen leaving and M.G. is seen walking back from the area on the phone.

¶8 A Milwaukee park enforcement employee testified that M.G. ran up to him crying, pulling her pants up, and that he had to assist her with her 911 call because she was "hurting and crying" and having difficulty communicating. M.G. told him that she "got beat up, and a guy forced me in his car and raped me."

¶9    Detective Nicholas Johnson testified that he interviewed M.G. at the hospital in the early morning of December 5. Detective Johnson testified that M.G. was lethargic and sometimes unresponsive and fell asleep during questions. M.G. described the assailant as "possibly a Puerto Rican male," bald, clean-shaven, about five-foot-nine, and in his early twenties with a neck tattoo. M.G. also stated that the assailant was wearing a blue coat and a grey jumpsuit.

¶10    The sexual assault nurse examiner (SANE), who examined M.G. and collected evidence, also testified. The SANE nurse testified about M.G.'s description of the assault, and M.G.'s behavior during the examination. The SANE nurse described M.G. as maintaining eye contact, quiet, and tearful. M.G. also reported feeling "very tired." The SANE nurse further testified that M.G. had admitted to smoking crack, drinking alcohol, and taking a sleeping pill.

¶11    Testimony was also introduced from a Forensic Analyst with the Wisconsin State Crime Laboratory. The Forensic Analyst testified that she performed DNA analysis on a number of items, including an external genital wipe, an external genital swab, and an anal swab from M.G. A DNA profile was recovered and entered into the Combined DNA Index System (CODIS) database resulting in a match to Singh's DNA profile. The Forensic Analyst further testified that she was able to determine, to a reasonable degree of scientific certainty, that Singh was the source of DNA recovered from M.G.

¶12    A video recording of Singh's police interview was played for the jury. During the interview, Singh denied having any contact with M.G. and, after being shown her picture, denied ever having seen her. Singh admitted to having sex with someone in September 2017, but claimed that was the last time he had

sex with anyone, other than his wife. Additionally, he admitted that he had a white work car.

¶13    Singh presented two witnesses, his mother and his wife. His mother testified that Singh drove a black car. His wife testified that Singh wore gold ring earrings, always has a beard, and drove a black car. During his wife's testimony, photos were introduced from December 6, 2017, reflecting that Singh had hair on his head.

¶14    Singh also testified at trial. He explained that he drove a black Chrysler as his personal car, and admitted that, as part of his employment, he drove a white Ford Focus. In contrast to his statements in the police interview, Singh admitted that M.G. was in his car, and he had vaginal and anal sex with her.

¶15    Singh testified that he saw M.G. walking on 20th or 21st Street and National Avenue. He testified that he was driving his black Chrysler, pulled up next to her, rolled down his window, and M.G. came to the passenger window and asked what he was looking for. Singh stated that he was looking for some fun, which meant that he was looking for sex. According to Singh, M.G. voluntarily got into the car and agreed to give him oral sex for twenty dollars. He testified that she then agreed to have vaginal and anal sex with him for free. After M.G. agreed to have anal sex, the condom ripped and he ejaculated inside her. He claimed that he had agreed to speak with the police because he did not have anything to hide. Singh also admitted that he had a tattoo on the left side of his neck, his wife had earrings that looked like diamonds, and he had pierced ears. Singh further admitted that M.G. had no reason to lie about being sexually assaulted.

¶16 The jury found Singh guilty as charged. Singh filed a motion for postconviction relief asserting that trial counsel was ineffective on multiple grounds. Singh's arguments included that trial counsel should have introduced prior inconsistent statements of M.G., a security video from Walgreens, and photos showing a scar on Singh's head and tattoos on his hands. Singh also contended that trial counsel should have attacked M.G.'s credibility with her medical records, objected to the testimony from the SANE nurse, and objected to the prosecutor's closing argument. In addition, Singh sought a new trial in the interest of justice.[2]

¶17 The postconviction court denied the motion without a hearing. In regards to Singh's ineffective assistance of counsel claims, the court found that Singh had failed to establish prejudice and that some of his claims were "underdeveloped." In regards to Singh's interest of justice claim, the court found that the controversy was fully tried and that a new trial in the interest of justice was not warranted. This appeal follows.

## DISCUSSION

¶18 On appeal, Singh renews his arguments that trial counsel was ineffective and that he is entitled to a new trial in the interest of justice. We address each of his arguments below.

---

[2] Singh also argued that the prosecutor engaged in misconduct. Singh does not raise this issue on appeal and thus we do not further discuss it. *See Young v. Young*, 124 Wis. 2d 306, 317, 369 N.W.2d 178 (Ct. App. 1985) ("An issue which has not been briefed or argued on appeal is deemed abandoned.").

## I.      Ineffective Assistance of Counsel

### A.      Legal Standards

¶19    To prevail on a claim of ineffective assistance of counsel, a defendant must show that his or her attorney's performance was deficient as well as prejudicial to his or her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, the defendant must show that counsel's actions or omissions "fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant must show that counsel's deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In other words, there must be a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. We need not address both prongs of the *Strickland* test if the defendant does not make a sufficient showing on one of the prongs. *Id.* at 697.

¶20    "Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact." *State v. Maday*, 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611. The circuit court's findings of fact will be upheld unless they are clearly erroneous. *Id.* "Questions of whether counsel's performance was deficient and prejudicial are questions of law we review *de novo*." *State v. Fonte*, 2005 WI 77, ¶11, 281 Wis. 2d 654, 698 N.W.2d 594 (emphasis added).

¶21    Whether a postconviction motion entitles a defendant to a hearing is also a mixed standard of review. *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. First, we independently determine "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to

relief." ***State v. Ruffin***, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. "Whether the record conclusively demonstrates that the defendant is entitled to no relief is also a question of law we review independently." ***Id.*** If the postconviction motion "does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." ***Id.***, ¶28. We review discretionary decisions for an erroneous exercise of discretion. ***Id.***

### B. Application

¶22 As a preliminary matter, we note that in his initial brief to this court, Singh asserts that "the allegations of counsel's unprofessional errors must be accepted as true" because the postconviction court only addressed the prejudice prong. Singh is mistaken. The mere fact that the court did not address deficient performance does not mean that Singh satisfied this prong of the ***Strickland*** test; rather, it only means that he failed to satisfy the prejudice prong. The court was not required to address both prongs. *See **State v. Adamczak***, 2013 WI App 150, ¶21, 352 Wis. 2d 34, 841 N.W.2d 311 ("If a defendant fails to satisfy one prong of the analysis, the reviewing court need not address the other."). We now turn to Singh's specific allegations.

### 1. Individual Claims of Error

¶23 Singh first contends that trial counsel was ineffective for failing to point out two inconsistences in M.G.'s statements. Singh's postconviction motion alleged that M.G. was not consistent as to how she got into the car or the street corner on which she was abducted. These inconsistencies, however, only matter if there was an issue regarding whether M.G. was actually in Singh's car. Here,

Singh admitted that M.G. was in his car. Therefore, we are not convinced that, had the inconsistencies about how and where she got into the car been introduced, there is a reasonable probability that the result of the trial would have been different. *See Strickland*, 466 U.S. at 694.

¶24 Second, Singh contends that trial counsel was ineffective for failing to confront M.G. about a scar on Singh's head and tattoos on his hands. This case, however, was not about identification. As Singh acknowledges, this case was about whether M.G. consented. During his testimony, Singh admitted that he had sexual intercourse with M.G. in his car. Thus, because the case was not about identification, we are not persuaded that had trial counsel questioned M.G. about these physical attributes that there is a reasonable probability that the result of the trial would have been different. *Id.* Contrary to Singh's suggestion, we simply are not convinced that M.G.'s alleged inability to remember specific details of Singh's appearance or details of the attack would have impeached her ability to remember whether she consented.

¶25 Third, Singh contends that trial counsel was ineffective for failing to introduce a surveillance video from Walgreens. Singh states that the video would have shown that no abduction occurred at 27th Street and National Avenue, thus establishing that M.G. was mistaken about where the abduction occurred. The jury, however, was told this information. Detective Johnson testified that he watched the Walgreens' video, which showed the intersection of 27th Street and National Avenue at the time of the abduction, and the video did not show anything of significance that helped in the investigation. Thus, we fail to see how playing the video would have made any difference.

9

¶26     Fourth, Singh contends that trial counsel was ineffective for failing to object to the SANE nurse's opinion testimony that there are rarely injuries in sexual assault victims. Singh asserts that the nurse's testimony was a discovery violation because it went beyond what was set forth in the notice of expert witness testimony. Additionally, according to Singh, the SANE nurse's testimony prejudiced him because the testimony explained why M.G. did not have any injuries despite her allegation that the sexual intercourse was "so vigorous that the condom broke."

¶27     In response, the State observes that the notice of expert testimony specifically states that the SANE nurse "will testify regarding the frequency of injuries in sexual assault exams[.]" Thus, according to the State, this aspect of the nurse's testimony was disclosed, and as a result, trial counsel was not ineffective in this regard. *See State v. Toliver*, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) (holding that counsel is not ineffective for failing to pursue meritless arguments).

¶28     The State also points out that Singh admitted the condom broke, thus, negating any impact the SANE nurse's testimony may have had as to whether the condom broke. Further, the State asserts that Singh provides no evidence of a relationship between the "vigorousness" of the intercourse and the presence of injuries. Accordingly, the State contends that there is not a reasonable probability that an objection to the SANE nurse's testimony would have led to a different result.

¶29     Singh does not respond to these arguments in his reply brief, which we accept as a concession that the State is correct. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (holding

that an appellant's failure to dispute respondent's arguments in a reply brief may be taken as a concession). Thus, we reject Singh's argument that trial counsel was ineffective for failing to object to the SANE nurse's testimony.

¶30 In addition, Singh contends that trial counsel was ineffective for failing to highlight the entry in M.G.'s medical records that she had a "flight of ideas," and failing to object to the prosecutor's closing argument, which referenced a YouTube video.[3] Singh also contends that the postconviction court was wrong in finding that these claims were "underdeveloped."

¶31 In response, the State asserts that Singh does not explain why the postconviction court was incorrect that the claims were "underdeveloped" and therefore we should not consider Singh's claims. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). The State also contends that we should reject Singh's claims on other grounds.

¶32 In regards to Singh's claim that trial counsel should have introduced evidence that M.G. had a "flight of ideas," the State points out that trial counsel highlighted several other pieces of impeachment evidence, including that M.G. was under the influence of alcohol, cocaine, and a sleeping pill, and that a trial attorney is not ineffective for failing to address every conceivable piece of impeachment evidence. Additionally, according to the State, given the information regarding M.G.'s substance use, the testimony that M.G. was

---

[3] During closing argument, in rebuttal, the prosecutor referenced a YouTube video that asks the viewer to count the number of basketball passes made between a group of people. As the viewer is busy counting the number of passes, a person in a gorilla suit walks through the screen, which some viewers do not notice. The prosecutor used this video as an analogy to explain why M.G. may have missed some details about Singh's personal appearance.

lethargic, unresponsive, and repeatedly fell asleep, and that M.G. had just experienced a traumatic forcible sexual assault, the jury would not have been surprised to learn that M.G. was having trouble communicating clearly. Thus, there was not a reasonable probability that the information that M.G. had a "flight of ideas" would have affected the verdict.

¶33 Finally, in regards to the closing argument claim, the State asserts that attorneys have "considerable latitude in closing arguments," *see State v. Burns*, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166, and it is permissible for prosecutors to ask jurors to consider "matters of common knowledge, observations and experience in the affairs of life," *see State v. Powell*, 2012 WI App 33, ¶14, 340 Wis. 2d 423, 812 N.W.2d 520. Further, any possible prejudice was cured when the jury was instructed that closing arguments are not evidence as jurors are presumed to follow instructions. *See State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989).

¶34 Once again, Singh does not respond to these arguments in his reply brief, thus, we deem this a concession that the State is correct. *See United Coop.*, 304 Wis. 2d 750, ¶39. Accordingly, we reject Singh's arguments that trial counsel was ineffective for failing to highlight the entry in M.G.'s medical records that she had a "flight of ideas," and failing to object to the prosecutor's closing argument.

### 2. Cumulative Error

¶35 Singh contends that the cumulative effect of trial counsel's errors prejudiced him. We disagree. In establishing cumulative prejudice, "each alleged error must be deficient in law … in order to be included in the calculus for prejudice." *State v. Thiel*, 2003 WI 111, ¶61, 264 Wis.2d 571, 665 N.W.2d 305. "[I]n most cases errors, even unreasonable errors, will not have a cumulative

impact sufficient to undermine confidence in the outcome of the trial, especially if the evidence against the defendant remains compelling." *Id.*

¶36    Here, even if we assume that trial counsel performed deficiently with respect to the grounds raised by Singh, there is not a reasonable probability that, but for the errors, the result would have been different. *See State v. Domke*, 2011 WI 95, ¶61, 337 Wis. 2d 268, 805 N.W.2d 364.  The inconsistencies or inaccuracies raised by Singh primarily relate to the details of the assault and M.G.'s ability to describe Singh.  Once again, however, this case was not about identification, but whether M.G. consented.  Further, in regards to the prosecutor's closing argument claim, we agree with the State's argument, as noted above, that any possible prejudice was cured when the jury was instructed that closing arguments are not evidence.

¶37    Moreover, as the State observes, the evidence of Singh's guilt was strong.  Singh admitted that M.G. was in his car and that he had sexual intercourse with her.  This was corroborated by DNA evidence, the video from the Mitchell Park Domes, and the testimony from the Milwaukee park enforcement employee who said that M.G. ran to him crying and needed help communicating to the 911 operator.  As Singh admitted, M.G. had no conceivable motive to lie about being sexually assaulted.  Additionally, Singh denied knowing M.G. in his police interview, but then completely changed his story at trial alleging that they had consensual sex.

¶38    Thus, whether we examine the alleged errors individually, or cumulatively, Singh has not established he was prejudiced. *See Strickland*, 466 U.S. at 694.  Accordingly, we conclude that the postconviction court properly

denied Singh's motion without an evidentiary hearing. *Allen*, 274 Wis. 2d 568, ¶9.

## II.     New Trial in the Interest of Justice

¶39     Singh argues that we should grant a new trial in the interest of justice because the real controversy was not fully tried. *See* WIS. STAT. § 752.35 (2019-20).[4]  "The power to grant a new trial when it appears the real controversy has not been fully tried 'is formidable, and should be exercised sparingly and with great caution.'" *State v. Sugden*, 2010 WI App 166, ¶37, 330 Wis. 2d 628, 795 N.W.2d 456 (citation omitted).  We exercise our power to grant a discretionary reversal only in exceptional cases. *Id.*

¶40     In short, this is not an exceptional case in which the record suggests that the real controversy has not been fully tried.  As discussed above, we reject Singh's arguments, and he has not presented any other basis that would justify the exercise of our discretionary reversal power.  We therefore decline Singh's request to grant a new trial in the interest of justice.

## CONCLUSION

¶41     For the reasons stated above, Singh's arguments for a new trial on the basis of ineffective assistance of counsel and in the interest of justice fail.  Accordingly, we affirm the judgment and the order denying the postconviction motion.

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.