STATE of Wisconsin, Plaintiff-Respondent,

v.

Rock K. INGRAM, Defendant-Appellant.†

Court of Appeals

*No. 95–2964–CR. Submitted on briefs June 13, 1996.—Decided August 21, 1996.*

(Also reported in 554 N.W.2d 833.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *John D. Lubarsky*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Pamela Magee*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J. Rock K. Ingram raises two evidentiary challenges to his conviction for fleeing a traffic officer. He maintains that the trial court should have excluded the testimony from his parole agent and the testimony from his arresting officer which the State used to show that Ingram had the motive and intent to elude the police. We conclude that the trial court properly exercised its discretion in both instances and affirm the conviction.

BACKGROUND

An officer tried to stop Ingram's automobile on October 31, 1994, after he saw Ingram commit a minor traffic violation. The officer signaled to Ingram with his lights and siren and pursued him until Ingram eventually pulled over and ran from the car. The officer could not catch Ingram on foot but did speak with Ingram's passenger who remained in the car. She told the officer that Ingram was the driver and that he had been drinking earlier that night.

The police eventually found Ingram and took him into custody on November 18, 1994. That evening the police learned that he was at a tavern. When the police first entered the tavern, Ingram spotted them and started walking towards another exit. The police were nonetheless able to make the arrest.

The State charged Ingram with a single count of fleeing a traffic officer. *See* §§ 346.04(3) and 346.17(3), STATS. The State also included a repeater enhancer based on Ingram's felony escape conviction in March 1993. *See* § 939.62(1), STATS. The jury found Ingram guilty and the trial court sentenced him to six years of imprisonment.

The State chiefly relied on four witnesses to secure the conviction. The traffic officer testified that he saw Ingram make an improper stop and that Ingram ignored his lights and siren. The State also called Ingram's girlfriend to the stand. She explained that she and Ingram were out drinking that night. While she confirmed that Ingram was driving the car and that she and Ingram were arguing in the car, she could not recall further details because she was too intoxicated that evening to remember them.

Ingram's parole agent and the arresting officer also testified. The parole agent generally explained

that Ingram was a high-risk parolee and specifically noted that Ingram was not permitted to drink alcohol. The agent explained that if Ingram violated the rules of his parole, he could be returned to prison. In fact, the agent testified that Ingram had once been taken off parole for violating the no-alcohol rule. The arresting officer's testimony was not as detailed. He simply described how Ingram first tried to walk away from him and the other officers when they came to the tavern to make the arrest.

The defense strategy focused on the circumstances of the attempted traffic stop and tried to show that Ingram was not consciously trying to flee. Although Ingram did not testify and did not call any witnesses on his behalf, he nonetheless tried to show through cross-examination that he never realized that the traffic officer was behind him or that he was being pulled over. Ingram argued that there were poor weather conditions that night and that he was further distracted by the argument that he was having with his girlfriend.

The first of Ingram's appellate claims is that the trial court should have excluded the testimony from his parole agent. He asserts that the agent's testimony was improper "other acts" evidence which was not relevant and unfairly prejudicial. Ingram argues that the only value of the evidence was to give the jury an impression that he was a danger to the community and that he should be returned to prison.

Ingram's second claim pertains to the testimony from the arresting officer. He argues that this evidence improperly suggested that he fled in this instance because he was the type of person prone to flee, and that this evidence only served to cast him in a poor light.

181

Both of Ingram's claims involve challenges to the trial court's discretionary control over the admission of evidence. Under our deferential review of such claims, we gauge whether the trial court applied the correct legal standard and if its conclusion was grounded on a logical interpretation of the facts. *See State v. Rogers*, 196 Wis. 2d 817, 829, 539 N.W.2d 897, 902 (Ct. App. 1995).

## PAROLE AGENT'S TESTIMONY

Ingram originally raised his objection to the calling of the parole agent at the opening of trial and outside the presence of the jury. He claimed that the agent's testimony constituted generally inadmissible "other acts" evidence and that it was immaterial and prejudicial. The trial court disagreed, however, and reasoned that the testimony would show the jury why Ingram wanted to flee. It explained that most jurors would ordinarily wonder why "someone who is just drinking [would] want to flee from the officer assuming he is not intoxicated?" The trial court further found that the probative value of this evidence outweighed its prejudicial impact. The trial court also noted its disagreement that the agent's testimony should be classified as "other acts" evidence. The trial court viewed the prospective evidence as coming under the relevancy standard of § 904.03, STATS., not the "other acts" rule.

When the agent subsequently took the stand, Ingram renewed his objection and now points to three elements of the agent's testimony which he alleges were not relevant. First, the agent said that Ingram was assigned to the "high risk" pool of parolees. Second, the agent informed the jury that Ingram had been

182

released from prison on September 27, 1994, about one month before the failed traffic stop. Third, the agent explained that he had already been looking for Ingram for a few days before the attempted traffic stop because Ingram had failed to keep in touch with him.

We agree with the State, however, that these three points were all related to Ingram's motive and intent to flee from the police. This evidence suggested that Ingram disregarded the strict conditions imposed on him, particularly the no-alcohol rule, and manifested his disregard of parole by refusing to see his parole agent or otherwise complying with the rules of parole. This evidence further suggested that Ingram did not want to be caught driving a car after he had been out for the evening and provided an answer to why he tried to flee the traffic officer that evening. The record supports the trial court's decision that this material was relevant to the State's case.

Indeed, we believe that the parole agent's testimony was crucial to the State's case. As the trial court correctly recognized, without such evidence the jury would have been left wondering why Ingram would have wanted to flee since the traffic officer just believed he had committed a minor violation. This evidence, revealing Ingram's desire to avoid the police, became the keystone to the State's case. We conclude that the testimony was relevant.

Next, we must address whether the agent's testimony, although relevant, was nonetheless unfairly prejudicial and therefore inadmissible. *See* § 904.03, STATS. On this point, Ingram contends that these pieces of information "inferentially . . . warned the jury that [he] presents a high risk to the community" and improperly suggested that the jury should find him

guilty for this reason alone. He cites *United States v. Bland*, 908 F.2d 471, 473 (9th Cir. 1990), *cert. denied*, 506 U.S. 858 (1992), to illustrate the concern that some courts have had with admitting evidence about the particular facts of a defendant's criminal history because the jury will not concentrate on whether the facts indicate guilt, nor will it consider acquitting a defendant if it believes a dangerous person will be released into the community.

However, the decision to exclude probative evidence must be grounded on a conclusion that the evidence was not just prejudicial, but that the evidence's prejudicial effect substantially outweighed its probative benefit. Section 904.03, STATS. The State used the evidence from the parole agent to rebut Ingram's theory that he did not see the traffic officer. For example, the prosecutor stated during closing arguments:

> There is no way that Mr. Ingram was not aware that the police were attempting to pull him over. And he didn't pull over and I think it's understandable given his situation at that particular time, being on parole facing possible revocation and returning to prison which — from which he was released about a little bit more than a month before this particular incident.

Knowledge about the background of Ingram's parole may have inferentially suggested to the jury that Ingram was a dangerous person, but it had greater than equal probative value to the State's case.

Moreover, we are unpersuaded by Ingram's reference to the *Bland* decision. The language regarding the negative inferences that a jury might draw from a defendant's criminal history seems applicable to this

184

case, but the facts and reasoning certainly are not. There, the government charged the defendant with being a felon in possession of a weapon. The defendant claimed, however, that law enforcement officers planted the weapon. *Bland*, 908 F.2d at 472. In response, the government submitted the defendant's outstanding arrest warrant to show that law enforcement had no reason to plant the gun and "manufacture" a charge because the defendant was already suspected of a crime. *See id.* at 473. But instead of simply telling the jury about the warrant, the government also described how the defendant was suspected of molesting and murdering a seven-year-old girl. *Id.*

■

Although the court of appeals agreed that the warrant itself was admissible, it held that the facts about the specific crime had no probative value to the government's theory and only prejudiced the defense. *Id.* The reasoning and holding of *Bland*, therefore, do not apply to Ingram's case because the alleged prejudicial facts about his parole were relevant to the State's theory. As a result, the probative value of the parole agent's testimony prevents the balancing process from tipping towards a conclusion that the agent's testimony was so unfairly prejudicial that the trial court should have excluded it.

OUR REPLY TO THE DISSENT

Although Ingram does not argue his claim in this fashion, the dissent concludes that the State's use of testimony from probation and parole agents always results in prejudice because juries are unable to confine it to the purpose for which it has been legitimately offered and will not overlook what a defendant's crimi-

nal history suggests about his or her character. The dissent further argues that the trial court failed to use the correct evidentiary standard, that is § 906.09, STATS., *amended* 1995 Wis. Act 77, § 622-27, which it claims applies whenever the trial court gauges evidence regarding a person's criminal history. Next, the dissent claims that the trial court improperly conducted the balancing tests demanded under either the general relevancy rule of § 904.03, STATS., or the "other acts" standard, § 904.04, STATS. Finally, the dissent adds that the trial court compounded its failure to apply the correct evidentiary standard when it failed to consider *Nicholas v. State*, 49 Wis. 2d 683, 688-89, 183 N.W.2d 11, 14-15 (1971), and enforce the defendant's recognized power to control the disclosure of his or her criminal history by taking the stand and admitting to the prior convictions.

We disagree with each of these points. While we acknowledge that evidence from a parole agent is inherently prejudicial, this conclusion does not settle the matter of admissibility. It simply begs the question of whether the prejudicial character of the testimony *substantially outweighs* its probative value. *See* § 904.03, STATS.

Moreover, we are convinced that whether a parole agent's testimony is characterized as generally relevant evidence, "other acts" evidence or past criminal history, the balancing analysis to determine if the evidence is prejudicial is still the same. For each class of evidence, the trial court is required to balance the probative value of the proffered testimony against the prejudicial effect. *See* § 904.03, STATS. Here, the trial court conducted the same "prejudice" analysis that it would have pursued had the parole agent's testimony been classified as criminal history evidence under

§ 906.09, STATS., as the dissent contends. The trial court correctly identified what was at stake, considered whether the agent's testimony really helped the State prove its case and measured whether it was unfairly prejudicial. Whether the evidence was properly described really does not help answer the question of whether the trial court misused its discretion.

Finally, we are indeed satisfied that the trial court made the proper determination that § 906.09, STATS., was not applicable here and that it did not have to ensure that Ingram was given the opportunity to make an admission about his criminal history. In our view, even if the parole agent informed the jury that Ingram had a prior conviction, since this information was not used to challenge Ingram's credibility, but rather was introduced to prove his motive and intent, the trial court had no duty under § 906.09(3) to make the State offer better proof that Ingram had a prior conviction.

The first source we rely on is the Judicial Council Committee's Note which accompanies § 906.09, WIS. STATS. ANN. (West 1993). This commentary cautions that "[t]he most troublesome aspect of impeachment by evidence of conviction is presented when the witness is himself accused in a criminal case." *Id.* (quoted source omitted). The drafters thus intended that this statute govern those situations where the State offers a defendant's criminal history to impeach his or her credibility and the defendant chooses to take the stand.

But in this case Ingram never took the stand. The State was not interested in challenging his credibility; instead, it wanted to prove his motive and intent. The evidentiary standards that the dissent says were ignored by the trial court were not at all involved.

The case law analyzing "other acts" evidence also supports our belief that different evidentiary stan-

dards apply depending on whether the criminal history is used to challenge credibility or whether it is used as a means of proving motive or intent. If the dissent was correct, those reported cases in which the State attempted to prove intent by reference to the defendant's criminal history would contain some discussion of how § 906.09(3), STATS., played a role. The cases, however, do not mention this statute.

The supreme court's decision in *Vanlue v. State*, 96 Wis. 2d 81, 291 N.W.2d 467 (1980), provides a perfect illustration of the dichotomy between using a defendant's criminal history to impeach his or her credibility and using criminal history to prove a defendant's motive or intent. There, the State accused the defendant of possession of burglarious tools. The defendant responded that he only had the crowbar with him for protection while hitchhiking. *See id.* at 84, 291 N.W.2d at 468.

The defendant, however, had at least two prior burglary convictions and the State wanted to use them at trial. The supreme court first explained how the State had sought a pretrial ruling on whether it could use the convictions "for the purpose of attacking the defendant's credibility." *Id.* at 85, 291 N.W.2d at 468. Moreover, the opinion details how the State did not have "certified copies" of the prior convictions and that the parties disputed the total number of convictions which could be mentioned to the jury. *See id.* What the supreme court was discussing there is § 906.09(3), STATS., and its requirement that the State provide an offer of proof before using prior convictions to attack credibility.

The *Vanlue* opinion then continues to discuss how the State had also sought a ruling on whether these same convictions "were relevant to the issue of intent

and admissible evidence under the provisions of § 904.04(2), Stats." *Vanlue*, 96 Wis. 2d at 85, 291 N.W.2d at 469. This case thus exemplifies how the State can use a defendant's criminal history for two different purposes. When the State uses it to attack the defendant's credibility, the trial court is required under § 906.09(3), STATS., to assess the State's offer of proof. In such situations, *Nicholas* applies and the defendant has the ability to forestall the State's use of this evidence by admitting to his or her criminal history on direct examination.

On the other hand, if the State wants to use the defendant's criminal history (consisting of prior convictions and other bad acts) to prove motive or intent (or any of the other categories outlined in § 904.04(2), STATS.), it must convince the trial court that such evidence is not being used to generally tarnish the defendant's character and show the court how it helps to prove the defendant's motive or intent. Of course, when using criminal history in this manner, the State must also show that the probative benefit of this material is not outweighed by its prejudicial impact. *See* § 904.03, Stats.

In this case, the State used the parole agent's testimony to prove Ingram's motive and intent. Assuming that this testimony passed an inference to the jury that Ingram had a prior conviction, and therefore the State was required to show how this testimony fit into § 904.04(2), STATS., the trial court correctly determined that this evidence was admissible because the agent's testimony revealed Ingram's motive and it was not unfairly prejudicial. Since Ingram's credibility was never specifically challenged, we believe that the dissent is mistaken when it claims that § 906.09(3),

189

STATS., should have played a role in the trial court's analysis.

Of course, our recognition that the parole agent's testimony played an important part in the State's case against Ingram is not a signal that we will generally approve of allowing a defendant's parole agent to testify. Although the State needed it here, we cannot imagine too many other instances where informing the jury about the defendant's current probation or parole status, or about the defendant's success under supervision, could be more relevant than prejudicial.

## ARRESTING OFFICER'S TESTIMONY

Next, we turn to Ingram's claim regarding the arresting officer's testimony. Ingram raises the same substantive allegations that this evidence was not relevant and that it was unfairly prejudicial.

Ingram starts his second argument with the trial court's reasoning. The court found that this evidence was relevant because it established that Ingram "was still of a mind to elude the officers on another occasion." However, Ingram again contends that his subsequent "act" of fleeing from the arresting officer cannot be used as evidence on whether he intended to flee from the traffic officer. He supports his argument with *State v. Spraggin*, 77 Wis. 2d 89, 94, 252 N.W.2d 94, 96 (1977), where the supreme court explained that one risk of "other acts" evidence is that it may lead the jury to believe the defendant is guilty of the charge merely because he or she is a person likely to do such acts.

We conclude, however, that the arresting officer's testimony was relevant because it also rebutted the defense's theory that Ingram never saw or heard the traffic officer. Ingram's subsequent choice to turn and

190

walk away from the police also supported the State's theory that Ingram also saw the traffic officer but chose to try to elude him. The trial court did not misuse its discretion in concluding that this evidence was relevant.

■

Likewise, even in light of the supreme court's concern in *Spraggin*, we see no unfair prejudice flowing to Ingram from this evidence. Although we see Ingram's point that the arresting officer's testimony makes him "look like a bad person prone to run from the police at every opportunity," in light of the probative value of this evidence, we do not believe that this evidence was so prejudicial that the trial court misused its discretion when it permitted the jury to hear it. *See* § 904.03, STATS. Even though this evidence, like the parole agent's testimony, was prejudicial, it nevertheless was more than *equally* valuable to the State which relied on it to rebut the defense's theory that Ingram never saw the traffic officer. The trial court properly exercised its discretion when it permitted the State to submit the officer's testimony.

*By the Court.*—Judgment affirmed.

SNYDER, J. (*dissenting*). Parole is a conditional release from imprisonment which entitles the parolee to serve the remainder of his or her criminal sentence outside the confines of a penal institution if he or she complies with all of the terms and conditions of the parole order. *Thomas v. Arizona State Bd. of Pardons and Paroles*, 564 P.2d 79, 81 (1977). Parole portends at least one prior criminal conviction that has resulted in a prison sentence. It is axiomatic that one on parole has a parole agent monitoring his or her conditional release

back into the community. The State called Ingram's parole agent to testify as a part of its case-in-chief. My concerns are three-fold.

First, the appearance and testimony of a *parole agent*, establishing that Ingram was on parole and not following the rules of parole, were not factored into the admissibility analysis which balances the probative value of evidence against its prejudicial effect. Advising the jury in the State's case-in-chief that Ingram is a parolee not following parole rules is inherently prejudicial. In the mind's eye of the jury, the trial was likely over when it was presented with that evidence. As recognized by *United States v. Bland*, 908 F.2d 471 (9th Cir. 1990), *cert. denied*, 506 U.S. 858 (1992), the failure to balance the probative value of that evidence against the full ramifications of the disclosure is not harmless error and is not curable by a limiting instruction as to how the evidence may be used by the jury. *See id.* at 473.

Second, irrespective of whether the admissibility of the parole agent's testimony is analyzed under § 904.03, STATS., or as "other acts" evidence, *see* § 904.04(2), STATS., the evidentiary analysis used by the trial court and affirmed by the majority does not include the consideration of a necessary legal standard. Where trial testimony reveals a prior criminal conviction to a jury, it is necessary to analyze the admissibility of such evidence under § 906.09, STATS., *amended by* 1995 Wis. Act 77, § 622-27.[1] Subsection (3) states in relevant part:

ADMISSIBILITY OF CONVICTION OR ADJUDICATION. No question inquiring with respect to a conviction of a

---

[1] The amendments to § 906.09, STATS., 1993-94, do not affect our analysis. We have, however, quoted the current statute.

crime . . . *nor introduction of evidence with respect thereto,* shall be permitted until the judge determines pursuant to s. 901.04 whether the evidence should be excluded. [Emphasis added.]

Since the parole agent's testimony is "evidence with respect" to Ingram's conviction, its admissibility requires consideration of the requirements of § 901.04, STATS.

Turning to the requirements of that section, the introductory language provides that "[p]reliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence shall be determined by the judge, subject to sub. (2)." Section 901.04(1), STATS. Subsection (2) then requires:

RELEVANCY CONDITIONED ON FACT. *When the relevancy of evidence depends upon the fulfillment of a condition of fact,* the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition. [Emphasis added.]

The condition of fact required before admitting the parole agent's testimony—in fact, the foundation for Ingram's parole status violations and motive to flee—is Ingram's previous criminal conviction. While Ingram's intent to avoid a return to prison may well have provided him with a motive to flee and been "crucial" to the State's case, majority op. at 183, the admissibility of evidence is not based solely on that consideration. Rather, in ruling as to the admissibility of the parole agent's testimony, the court must consider the prejudicial impact of allowing the prosecution during its case-in-chief to advise the jury that Ingram has a prior criminal conviction and is under parole supervision. Because the admissibility analysis did not consider

193

§ 906.09, STATS., and its requirement that the State present evidence of Ingram's prior conviction as foundation for the testimony of his parole agent, the prejudice inherent in the introduction of the parole agent's testimony was not weighed.

While the majority concedes that the appearance of the parole agent "may have inferentially suggested to the jury that Ingram was a dangerous person," majority op. at 184, it then concludes that no unfair prejudice attached to this revelation. This conclusion encapsulates my third concern with the admissibility of parole agent testimony.

Allowing the State to reveal in its case-in-chief the evidence of Ingram's prior conviction and parole status fails to consider a defendant's control over the disclosure of such evidence. While the law in Wisconsin provides for the use of prior conviction evidence in limited circumstances, it also recognizes the great potential for abuse which exists if the State is allowed to expound on the nature and details of past crimes. *Nicholas v. State*, 49 Wis. 2d 683, 688, 183 N.W.2d 11, 14 (1971). Therefore, the introduction of information pertaining to past convictions is carefully circumscribed and lies within the control of the defendant. *Id.* at 691, 183 N.W.2d at 16. The defendant controls the choice of whether past offenses will be mentioned by name. *Id.* Here, because the testimony of Ingram's parole agent was allowed during the State's case-in-chief, the State was allowed to circuitously introduce to the jury evidence of a prior criminal conviction, which is otherwise prohibited. Ingram was denied the safeguards provided by the law which place control over such disclosure in the hands of the defendant.

In sum, the appearance and testimony of Ingram's parole agent during the State's case-in-chief improp-

erly placed before the jury Ingram's prior conviction, that he was on parole for that conviction, and that he was in violation of that parole. Such testimony is inherently prejudicial, with "a tendency to influence the outcome by improper means." *See State v. Baldwin,* 101 Wis. 2d 441, 455, 304 N.W.2d 742, 750 (1981) (quoted source omitted). Furthermore, because the admissibility analysis did not include a consideration of § 906.09, STATS., regarding the admissibility of evidence of a prior conviction and thereby overlooked established precedent which allows a defendant to control such evidence, I respectfully dissent.