COURT OF APPEALS
DECISION
DATED AND FILED

April 24, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP19-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2021CF176

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RICHARD STEVEN VALDOVINOS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Columbia County: TODD J. HEPLER, Judge. *Affirmed*.

Before Blanchard, Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Richard Steven Valdovinos appeals a judgment of conviction and an order denying his postconviction motion for a new trial. Valdovinos argues that he is entitled to a new trial because defense counsel provided him with constitutionally ineffective assistance in two respects: (1) by failing to object to testimony that referenced Valdovinos's "parole officer" and the possibility of Valdovinos "going back to prison"; and (2) by failing to object to the prosecutor's alleged reference to facts not in evidence in its rebuttal closing argument.  We conclude that Valdovinos has not shown that he was provided ineffective assistance of counsel in either respect.  Therefore, we affirm.

## BACKGROUND

¶2     Valdovinos was convicted of three counts of strangulation and suffocation and two counts of battery, all as a repeater and as acts of domestic abuse.  As discussed in more detail below, these convictions stemmed from three separate incidents in 2020 and 2021 involving A.B., Valdovinos's wife at the time.[1]

¶3     During its opening statement, the prosecutor stated that, because there was no physical evidence of the crimes, the testimony of the witnesses was the only evidence that would be introduced.  Defense counsel asked the jury to focus on A.B.'s testimony and her credibility because "there [are] only two people who know actually what happened."

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2023-24), we refer to the victim using initials that do not correspond to her actual name.  All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

¶4     At trial, A.B. testified as follows. A.B. and Valdovinos had known each other for many years, and they eventually married in 2019. The three incidents of domestic abuse occurred in late 2020 through early 2021. The first incident, which happened in their house in October 2020, started when A.B. confronted Valdovinos about pornography that she found on his phone. Valdovinos became angry with her and held her against the wall by putting his hand on her throat. Valdovinos dropped her to the floor when his daughter and her boyfriend entered the room. The second incident happened in November 2020. A.B. was angry at Valdovinos for belittling her, and she started throwing and destroying items in the house. Valdovinos grabbed her, threw her to the ground, and put his knees on her chest and his hands on her throat. A.B. lost consciousness and woke up later lying on the floor in the same location. A.B. was "full of bruises" and had a black eye after this incident. The third incident happened in February 2021 when, during an argument in their house, Valdovinos grabbed A.B.'s throat and carried her into the kitchen by the throat. He then slammed her head "back and forth" between two cabinets before throwing her to the floor. While she was lying on the floor, Valdovinos punched her on the side of her body, then kicked her in the stomach. A.B. had "goose eggs" on her head after this incident and she believed that she had broken ribs. A.B. also said that she noticed blood in her ileostomy bag after this incident.[2] A.B. did not immediately report any of the three incidents to the police, nor did she seek medical treatment for her injuries.

---

[2] "An ileostomy is a surgical creation of an opening through the abdomen into the small intestine. An ileostomy bag is connected, into which fecal matter is directed from the rectum." *Mackinaw v. Bowen*, 866 F.2d 1023, 1023 n.3 (8th Cir. 1989). Here, A.B. had an ileostomy bag as a result of colon surgery, for which she was receiving postoperative care and regular intravenous (IV) infusions.

¶5     A.B. eventually reported the three incidents to authorities in March 2021.  When asked by the prosecutor why she did not report Valdovinos's conduct earlier, A.B. responded, "Because I loved him.  He was my husband, and I didn't want to see him go back to prison.  And fear.  Fear of consequences."  A.B. stated that she never sought medical treatment for the "same reason[s]."  Valdovinos's counsel did not object or move to strike the reference to Valdovinos being previously incarcerated.  The prosecutor also asked A.B. who she told about the incidents, and she responded: "I went to his parole officer."[3]  Moreover, during defense counsel's cross-examination of A.B., defense counsel asked A.B. when she first reported Valdovinos to the police.  A.B. responded: "I don't remember the day he was arrested or which day exactly it was that I spent three hours with his parole officer."  Defense counsel did not object to or move to strike either of A.B.'s references to Valdovinos's parole officer.

¶6     The prosecution also presented brief testimony from the following individuals.  Valdovinos's daughter and her boyfriend testified that they were in another room of the house during the October 2020 incident, but they both testified that they did not witness any physical violence between Valdovinos and A.B.  Both of them also testified that they did not tell the police in an October 2021 interview that they had witnessed Valdovinos push A.B. against the wall during that incident.  The detective who interviewed Valdovinos's daughter and her boyfriend in October 2021 testified that Valdovinos's daughter and her boyfriend both said during that interview that they witnessed Valdovinos push

---

[3] Valdovinos was not on parole during the time in which A.B. reported these incidents.  Rather, Valdovinos was on supervision, which included being monitored by an agent of the Department of Corrections.  We understand that when A.B. referenced Valdovinos's "parole officer," she was referring to this agent.

4

A.B. against a wall. In addition, the police officer who interviewed A.B. after she reported the incidents in March 2021 testified that A.B. was crying during the interview and appeared "upset," "distraught," and "scared." Valdovinos did not testify at trial.

¶7 Defense counsel's closing argument focused on A.B.'s credibility. At one point, he pointed out that A.B. was getting weekly IV treatments at the time of the incidents due to her past colon surgery and argued that she would not have been able to hide her injuries from her treatment providers. In its rebuttal closing argument, the prosecutor responded to this argument by asking the jury to use its common knowledge about the nature of blood draws and IV treatments: "When you have gone to the doctor … to have blood draw[n], where do they draw it from? Your arm; right? When you've gone to the doctor to have an IV, where do they put the IV in? Your arm; right? … [It is] [e]asy to hide what's going on in other areas of your body." Defense counsel did not object to this rebuttal argument by the prosecutor.

¶8 The jury found Valdovinos guilty on all five counts, and the circuit court sentenced him to a total of 18 years of imprisonment.

¶9 Valdovinos filed a postconviction motion arguing that he was provided ineffective assistance of counsel in two respects: (1) defense counsel failed to object to A.B.'s testimony that she reported Valdovinos to his parole officer; and (2) defense counsel failed to object during the prosecutor's rebuttal closing argument when the prosecutor referenced facts not in evidence regarding A.B.'s IV treatments. At the *Machner* hearing, defense counsel testified that he

did not have any strategy in failing to object to A.B.'s two references to Valdovinos's parole officer and the prosecutor's rebuttal closing argument.[4] Defense counsel testified that, at least with the benefit of hindsight, he believed that he would have been concerned at the time of trial that lodging contemporaneous objections would have served to draw attention to the allegedly improper references, to the detriment of the defense.

¶10 In a written order, the circuit court denied Valdovinos's postconviction motion. The court concluded that defense counsel's failure to object to A.B.'s references to Valdovinos's parole officer was not deficient because objecting would have drawn the jury's attention to Valdovinos's supervision status. The court also concluded that the fleeting references to the parole officer were not prejudicial because of A.B.'s "credible testimony regarding the multiple incidents of abuse." Additionally, although Valdovinos did not raise it in his postconviction motion or at the *Machner* hearing, the court sua sponte considered A.B.'s testimony that she did not want Valdovinos to "go back to prison" and concluded that this testimony would not have been excluded if defense counsel had objected because the testimony was relevant to A.B.'s motivation and rationale concerning her delayed reporting of the abuse. The court also concluded that defense counsel's failure to object to the prosecutor's rebuttal closing argument concerning A.B.'s IV treatments was not deficient because any objection would have been overruled.

---

[4] "A *Machner* hearing is '[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case.'" *State v. Domke*, 2011 WI 95, ¶20 n.5, 337 Wis. 2d 268, 805 N.W.2d 364 (citation omitted); *see also State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶11    Valdovinos appeals his judgment of conviction and the circuit court's order denying his postconviction motion.

## DISCUSSION

¶12    As noted, Valdovinos argues on appeal that he is entitled to a new trial because he was provided ineffective assistance of counsel on two grounds: (1) defense counsel failed to object to A.B.'s testimony that she did not want to see Valdovinos "go back to prison" and that she reported Valdovinos to his parole officer;[5] and (2) defense counsel failed to object during the prosecutor's rebuttal closing argument concerning A.B.'s IV treatments. Valdovinos argues that defense counsel's failures to object to these statements were deficient performance that prejudiced him.[6]  These arguments fail.

---

[5] As noted in the text, Valdovinos's postconviction motion did not argue that his defense counsel was ineffective for failing to object to A.B.'s testimony that she delayed reporting the incidents, in part, because she did not want Valdovinos to return to prison. "Issues that are not preserved in the circuit court … generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727.  However, the circuit court addressed this testimony in its decision, concluding, for the reasons discussed in the text, that efforts of defense counsel to prevent or object to this testimony would not have been successful. We will consider Valdovinos's argument regarding A.B.'s testimony on this issue because the circuit court addressed it in the court's decision denying Valdovinos's postconviction motion, the State does not argue that Valdovinos forfeited this argument in the circuit court, and both parties address the issue in their appellate briefing.  *State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530 ("[A] reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case.").

[6] Valdovinos also argues on appeal that defense counsel's failure to object to A.B.'s testimony and the prosecutor's rebuttal closing argument was "plain error" under WIS. STAT. § 901.03.  The State argues in its appellate response brief that because this argument was not raised in Valdovinos's postconviction motion and not addressed by the circuit court, it was thereby forfeited.  *See Huebner*, 235 Wis. 2d 486, ¶10 (issues that are not preserved at the circuit court generally will not be considered on appeal).  Valdovinos fails to address the State's forfeiture argument in his reply brief, effectively conceding the issue, and does not persuade us that we should address his plain error argument despite his failure to preserve this argument in the circuit court.  *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750,

(continued)

## I. Standard of Review

¶13    Whether a defendant was denied the constitutional right to effective assistance of counsel involves questions of fact and law.  ***State v. Breitzman***, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.  "The factual circumstances of the case and [defense] counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo."  ***Id.***

¶14    To demonstrate that defense counsel's assistance was ineffective, Valdovinos has the burden of showing that counsel's performance was deficient and that the deficient performance was prejudicial.  ***State v. Carter***, 2010 WI 40, ¶21, 324 Wis. 2d 640, 782 N.W.2d 695.  With respect to the deficiency prong, Valdovinos must show that counsel's performance "fell below an objective standard of reasonableness" considering all of the circumstances.  ***Id.***, ¶22 (citation omitted).  There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance."  ***Id.*** (citation omitted).  "[C]ounsel's performance need not be perfect, nor even very good, to be constitutionally adequate."  ***Id.***  With respect to the prejudice prong, Valdovinos must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  ***Id.***, ¶37 (citation omitted).  We need not address both prongs if one prong is dispositive.  ***Id.***, ¶36.

---

738 N.W.2d 578 (appellant's failure to respond in reply brief to argument made in response brief may be taken as concession).

## II. A.B.'s Testimony

¶15 As noted, Valdovinos argues that he was provided ineffective assistance of counsel because defense counsel failed to object to A.B.'s testimony that she did not want Valdovinos to "go back to prison" or to A.B.'s references to Valdovinos having a parole officer. We consider each aspect of A.B.'s testimony in turn.

### 1. A.B.'s Testimony About Valdovinos Not Going Back to Prison

¶16 Regarding A.B.'s "back to prison" reference, we conclude that defense counsel's failure to object to this testimony was not deficient because any objection would have been overruled and would have drawn the jury's attention to the testimony.[7]

¶17 Our consideration of whether defense counsel was deficient in failing to object to A.B.'s testimony about Valdovinos going back to prison begins with our consideration of the admissibility of this testimony. Evidence is generally admissible if it is relevant. WIS. STAT. § 904.02. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. However, even if evidence is relevant, it may still be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." WIS. STAT. § 904.03. Evidence is unfairly prejudicial if it "appeals to the jury's sympathies, arouses its sense of

---

[7] Because we conclude that defense counsel's failure to object to this testimony was not deficient, we need not and do not address whether this aspect of counsel's performance was prejudicial when considering Valdovinos's ineffective assistance of counsel claim. *See* *State v. Carter*, 2010 WI 40, ¶36, 324 Wis. 2d 640, 782 N.W.2d 695.

horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." ***State v. Hurley***, 2015 WI 35, ¶88, 361 Wis. 2d 529, 861 N.W.2d 174 (citation omitted).

¶18    In the circuit court's decision denying Valdovinos's postconviction motion, the court stated that it would not have excluded A.B.'s testimony that she did not want Valdovinos to go back to prison because this testimony explained A.B.'s motivation for the delay in reporting the abuse. In other words, the court concluded that this testimony was relevant to A.B.'s credibility and to the jury's evaluation of the prosecution's case. A reasonable inference from the court's conclusion that defense counsel's attempt to exclude or object to this statement would not have been successful, is that, in the court's assessment, the risk of unfair prejudice did not substantially outweigh the probative value of the testimony.

¶19    Here, the circuit court could have reasonably concluded that A.B.'s testimony was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice. One aspect of Valdovinos's defense was to argue that A.B. was motivated to delay reporting the abuse because she wanted to wait until Valdovinos received a stimulus check from the government before she filed for divorce. If the jury believed this argument about A.B.'s motive, then the jury might have been less inclined to believe that A.B. was telling the truth about Valdovinos's abuse. As a result, the circuit court could have reasonably determined that A.B.'s testimony about her motive in delaying her report of Valdovinos's abuse was relevant to the jury's assessment of A.B.'s credibility. *See id.*, ¶81 ("A witness's credibility is always 'consequential' within the meaning of WIS. STAT. § 904.01.").

¶20 Moreover, the circuit court could have reasonably determined that the probative value of A.B.'s testimony was not outweighed by the danger of unfair prejudice. The prosecutor did not ask any follow-up questions to this testimony or otherwise dwell on Valdovinos's prior incarceration. Although there is a possibility that some jurors inferred that Valdovinos was a dangerous person or had a bad character because of his prior incarceration, as Valdovinos argues, the danger of this prejudicial effect was lessened because the prosecutor did not ask the jury to make this inference, nor did it argue that Valdovinos acted in conformity with any such character in the present circumstances. *See State v. Sullivan*, 216 Wis. 2d 768, 782, 576 N.W.2d 30 (1998) (evidence of a person's other acts presents less danger of unfair prejudice when it is not used to support an inference that the person has a bad character and acted in conformity with that character). In other words, the purpose of A.B.'s testimony was to explain the reason for her conduct, not to cast aspersions on Valdovinos's character. Because the circuit court could reasonably conclude that A.B.'s testimony was admissible and not unduly prejudicial, we conclude that defense counsel was not deficient for failing to object because any objection to that testimony would have been overruled. *See State v. Stroik*, 2022 WI App 11, ¶36, 401 Wis. 2d 150, 972 N.W.2d 640 ("[A]n attorney's failure to make an objection that would have been properly overruled by the court is not deficient performance.").

¶21 Valdovinos argues that this testimony should not have been admitted at trial because the danger of unfair prejudice substantially outweighed the probative value of this evidence under WIS. STAT. § 904.03, and that this court's decision in *State v. Ingram*, 204 Wis. 2d 177, 554 N.W.2d 833 (Ct. App. 1996), demonstrates that A.B.'s testimony was inadmissible character evidence. Contrary to Valdovinos's argument, *Ingram* supports an argument that A.B.'s testimony

11

was admissible. In ***Ingram***, law enforcement attempted to pull over a vehicle that the defendant was driving based on a traffic violation. ***Id.*** at 180. The defendant had been drinking alcohol prior to the stop, delayed pulling over, and fled his vehicle on foot. He was ultimately apprehended and charged with fleeing an officer. ***Id.*** The defendant's parole agent testified at trial that the defendant was a "high-risk" parolee, that the defendant had been released from prison one month before the traffic stop, and that the defendant had not kept in touch with the agent. ***Id.*** at 182-83. This court concluded that the agent's testimony was admissible because the prejudicial effect of the testimony did not substantially outweigh its probative value, reasoning that the defendant's parolee status provided an explanation and motive for the defendant fleeing a police officer after the traffic stop. ***Id.*** at 183-85. Just as the parole agent's testimony in ***Ingram*** was deemed relevant to the issue of the defendant's motive, here A.B.'s testimony about not wanting Valdovinos to return to prison was relevant in explaining her motive to delay reporting Valdovinos's abuse.

¶22 Valdovinos also argues that A.B.'s testimony was unfairly prejudicial under WIS. STAT. § 904.03 because the circuit court did not caution the jury about the "limited relevance" of that testimony. We are not persuaded. Although a jury instruction about this testimony may have lessened the danger of unfair prejudice, we do not think that the absence of such an instruction created such a danger that the circuit court would have been required to sustain an objection. As noted, the prosecutor did not dwell on this testimony or ask the jury to draw a negative inference about Valdovinos's character because of his prior incarceration. Therefore, it was not deficient performance for defense counsel to not request a jury instruction regarding the limited relevance of the testimony.

12

¶23 Separately, we conclude that defense counsel's failure to object to A.B.'s testimony was not deficient because defense counsel could have reasonably determined that an objection could have served to draw the jury's attention to the reference that Valdovinos was previously incarcerated. *See Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010) ("[T]he decision not to have [the testimony] stricken was likely a sound tactical decision, designed to not draw attention to the very issue … counsel rightfully wished to bury."). Valdovinos argues that this principle is inapplicable here because defense counsel testified that he had no strategy in failing to object to this testimony. This argument fails because our assessment of an alleged deficiency concerns "whether defense counsel's performance was objectively reasonable according to prevailing professional norms." *State v. Kimbrough*, 2001 WI App 138, ¶31, 246 Wis. 2d 648, 630 N.W.2d 752. For this reason, we conclude that defense counsel's performance was not deficient, even though he testified that he had no strategy in failing to object to A.B.'s testimony. *See id.* ("[D]efense counsel's failure to request a lesser-included offense instruction was reasonable despite counsel's subjective averment that he overlooked the availability of such a defense." (citing *United States v. Smith*, 10 F.3d 724, 728 (10th Cir. 1993))). For these reasons, we reject Valdovinos's arguments that defense counsel was deficient for failing to object to A.B.'s testimony about Valdovinos going back to prison.

## 2. A.B.'s References to Valdovinos's Parole Officer

¶24    We next consider A.B.'s references to Valdovinos's parole officer during her testimony.[8]  Unlike A.B.'s testimony that she did not want Valdovinos to go back to prison, A.B.'s references to Valdovinos's parole officer did not concern A.B.'s motive to delay reporting of Valdovinos's abuse.  For this reason, we assume without deciding that defense counsel's failure to object to A.B.'s two references to Valdovinos's parole officer was deficient.  But we conclude that it was not prejudicial because Valdovinos has not shown that there is a reasonable probability of a different trial outcome had counsel objected to this testimony.

¶25    We consider A.B.'s references to Valdovinos's parole officer in the context of the totality of evidence presented at trial.  *See State v. Thiel*, 2003 WI 111, ¶62 n.15, 264 Wis. 2d 571, 665 N.W.2d 305 (whether counsel's performance was prejudicial depends on "the totality of the evidence before the judge or jury" (citation omitted)).  As discussed above, A.B. testified in detail about Valdovinos's conduct during the three incidents at issue.  The police officer who interviewed A.B. when she eventually reported the incidents testified that A.B. was crying and appeared scared and upset.  Valdovinos's daughter and her boyfriend also testified that they were in the house at the time of the October 2020 incident, but they denied witnessing any abuse.  Their trial testimony was called into question when the detective who interviewed them in October 2021 testified that they told him they had witnessed Valdovinos push A.B. against a wall.  Given

---

[8] At another point during cross-examination, A.B. referenced Valdovinos's "PO" in referring to Valdovinos's parole officer.  Valdovinos doesn't mention this reference in his postconviction motion or on appeal, but neither our analysis nor conclusion would change on this issue had he done so.

14

that these prior inconsistent statements are not hearsay pursuant to WIS. STAT. § 908.01(4)(a), the jury was allowed to consider the possibility that these witnesses had truthfully reported the abuse.

¶26 When the foregoing evidence is considered together, it follows that A.B.'s testimony was the primary evidence presented at trial regarding Valdovinos's conduct during the three incidents. Valdovinos's daughter and her boyfriend were present only for the October 2020 incident. Their brief testimony was that they had not witnessed any abuse, not that abuse had not occurred, although there was evidence that they had truthfully told the police about witnessing the abuse. Valdovinos did not testify, and A.B.'s testimony was the most direct evidence presented at trial regarding Valdovinos's conduct during the November 2020 and February 2021 incidents. No other witness contradicted A.B.'s version of events in any meaningful way. As a result, the outcome of the trial was dependent on the jury's assessment of A.B.'s credibility.

¶27 For these reasons, A.B.'s credibility was central to the prosecution's case, and Valdovinos's theory of defense focused primarily on attacking A.B.'s credibility. For example, defense counsel argued in closing arguments that A.B. omitted certain details regarding the three incidents, questioned why A.B. never sought medical treatment for her injuries, suggested that A.B. delayed reporting the abuse and filing for divorce because she was waiting until Valdovinos received a stimulus check from the government, referenced A.B.'s admitted history of drug abuse and writing fraudulent checks, and characterized her trial testimony as being "assertive[]" and "surl[y]." However, A.B.'s testimony about the three incidents was consistent and unambiguous. The circuit court found in its postconviction decision that A.B. gave "credible testimony regarding the multiple incidents of abuse."

¶28 Additionally, A.B.'s references to Valdovinos's parole officer were brief and did not impugn Valdovinos's character. These references were also nonspecific, without any reference to the nature of any crime of which he had been convicted or any suggestion that it involved violence. Moreover, the prosecutor did not ask any follow-up questions concerning these references, did not repeat these references, did not move to admit any prior acts of Valdovinos, and did not mention Valdovinos's supervision status, his prior incarceration, or his past criminal activities at any time during the trial. And nobody at trial explicitly or even implicitly asked the jury to infer Valdovinos was a dangerous or bad person because he was being supervised by an agent.

¶29 Valdovinos argues that A.B.'s references to his parole officer were prejudicial because they disclosed to the jury that Valdovinos was being supervised by a state agent, which the jury could infer was based on a prior criminal conviction. For this reason, Valdovinos argues that this testimony constituted impermissible character evidence from which the jury could infer that Valdovinos was a dangerous person with a bad character. In support, Valdovinos points to this court's decision in *State v. Coleman*, 2015 WI App 38, 362 Wis. 2d 447, 865 N.W.2d 190. We disagree that *Coleman* is analogous. In that case, the defendant's counsel said during opening statements that the defendant had "spent time in prison," had "done all kind[s] of things in his past," and was "not an angel." *Id.*, ¶5. This court concluded that these statements contributed to a determination of prejudice because counsel "gave the jury negative and prejudicial information that was not relevant to any element of the crime" and "impugned Coleman's character." *Id.*, ¶¶42, 46. Unlike in *Coleman*, A.B.'s references to Valdovinos's parole officer, as previously discussed, did not impugn Valdovinos's character, and we conclude that *Coleman* is unpersuasive in this instance.

16

¶30    In sum, the fleeting and somewhat obscure nature of A.B.'s references to Valdovinos's parole officer likely had minimal effects on the jury's assessment of A.B.'s credibility. We are not convinced that A.B.'s testimony creates a reasonable probability that the jury would have acquitted Valdovinos on one or more charges if defense counsel had objected to or moved to strike this testimony.

### III. The Prosecutor's Rebuttal Closing Argument

¶31    Valdovinos also argues that he was provided ineffective assistance of counsel because defense counsel failed to object when the prosecutor argued in its rebuttal closing argument that A.B. would have been able to hide her injuries resulting from the abuse during her weekly IV treatments. According to Valdovinos, this argument was improper because it referenced facts about these treatments that were not in evidence, such as the location where the IV was placed on A.B.'s body and the standard procedures for such treatments. For the following reasons, we conclude that defense counsel's failure to object to the prosecutor's argument was not deficient because any objection would have been overruled. *See Stroik*, 401 Wis. 2d 150, ¶36.

¶32    We begin by considering the context of the prosecutor's remarks during its rebuttal closing argument. A.B. testified on cross-examination about the nature of the weekly medical treatments that she was receiving at the time of the incidents. In relevant part, she said: "I get an IV put in, and they give me a liter of fluids and three grams of magnesium.… I have lab work done. If my magnesium levels are 2.0 or less, then I get three grams of magnesium." Defense counsel did not ask A.B. where on her body the IV was placed, nor did he ask any other questions as to how the lab work or IV treatments were performed. The

17

prosecutor also did not ask any questions on redirect about A.B.'s weekly medical treatments.

¶33 In Valdovinos's closing argument, defense counsel referenced A.B.'s testimony about her medical treatment:

> This whole time, she's going every week to the doctor or to a healthcare provider. And the State wants you to believe that she did well in hiding [her injuries from the incidents]. She never says she hid anything. And, again, how much can you hide? She's getting an IV. They're seeing her regularly. Regularly enough … that they would notice things like that.

Because A.B. never testified in detail as to how the IV treatments were performed, this argument from defense counsel implicitly asked the jury to use its common knowledge and experience about the ordinary medical procedures for IV treatments.

¶34 In its rebuttal, the prosecutor responded to defense counsel's argument by asking the jury to use its common knowledge and experience about blood draws and IV treatments:

> So use your own common knowledge and experience. The judge instructs you on that as well. When you have gone to the doctor … to have blood draw[n], where do they draw it from? Your arm; right? When you've gone to the doctor to have an IV, where do they put the IV in? Your arm; right?
>
> So that's the kind of thing[] that was happening when she was going in on Mondays. They weren't doing a full exam. She told you that she was just going in and having blood work done and getting an IV. Easy to hide what's going on in other areas of your body.

¶35 We conclude that defense counsel's failure to object to this aspect of the prosecutor's rebuttal was not deficient because the prosecutor did not

improperly reference facts outside the evidence presented at trial. Instead, the prosecutor asked the jury to rely on its "common knowledge and experience" about blood draws and IV treatments to which A.B. had testified. This was not error because jurors are "permitted to take into account matters of common knowledge, observations and experience in the affairs of life," *State v. Powell*, 2012 WI App 33, ¶14, 340 Wis. 2d 423, 812 N.W.2d 520, and the jury here was instructed accordingly. Moreover, the prosecutor's request that the jurors rely on their own common knowledge and experience was not error because it was invited by defense counsel's argument that implicitly asked the jurors to use their own knowledge and experience about IV treatments. *See State v. Wolff*, 171 Wis. 2d 161, 169, 491 N.W.2d 498 (Ct. App. 1992) ("[W]here the argument of the defense 'clearly invited and provoked the remark of the prosecutor ... the appellant cannot complain because his argument backfired.'" (citation omitted)).

¶36     Valdovinos argues that, even if it was permissible to ask the jurors to use their own common knowledge and experience, the prosecutor's reference to the usual procedure for "blood draw[s]" was not relevant because A.B. did not testify that she had blood drawn. This argument fails because A.B. testified that she had "lab work" done to test her "magnesium levels" during her weekly IV treatments, which reasonably implies that A.B.'s blood was drawn during each treatment and tested for the amount of magnesium present. It was not error for the prosecutor to draw this reasonable inference from A.B.'s testimony and to have jurors rely on their common-sense understandings about what parts of A.B.'s body would be typically exposed for such treatments. *See Hurley*, 361 Wis. 2d 529, ¶95 ("'[C]ounsel is allowed considerable latitude in closing arguments,' and is permitted to draw any reasonable inference from the evidence." (citation omitted)).

¶37     In a related argument, Valdovinos asserts that the prosecutor's argument was improper because the particular procedures for IV treatments used by the hospital that A.B. visited were not matters within the juror's common knowledge. This argument fails because the prosecutor did not ask the jurors to use any knowledge about particular medical procedures employed by the hospital that treated A.B. Rather, as explained above, the prosecutor asked the jury to use its common knowledge and experience about blood draws and IV treatments generally. Valdovinos fails to identify any relevant error that jurors might have been expected to make in considering blood draws and IV treatments based on their life experiences given that these are not obscure or rare medical treatments.

¶38     In sum, when considered in the context of the entire trial, it was not error for the prosecutor to request that the jurors rely on their common knowledge and experience about blood draws and IV treatments when assessing A.B.'s credibility. Therefore, defense counsel's failure to object to this argument was not deficient performance because any objection would have been overruled. *Stroik*, 401 Wis. 2d 150, ¶36.

## CONCLUSION

¶39     For the foregoing reasons, the judgment and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.